Melissa M. Cowan (SBN 175326)
E-mail: mcowan@bwslaw.com
Edith S. Shea (SBN 177578)
E-mail: eshea@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Attorneys for Plaintiff Lincoln Benefit Life
Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, CENTRAL DIVISION

| | |
|---|---|
| LINCOLN BENEFIT LIFE INSURANCE COMPANY, a Nebraska Corporation,<br><br>            Plaintiff,<br><br>v.<br><br>ALEXANDER DALLAL, an individual; CLAIRE DALLAL, an individual; and DOES 1 through 10, Inclusive,<br><br>            Defendants. | Case No. 2:16-cv-9307<br><br>**COMPLAINT FOR (1) DECLARATORY JUDGMENT RE: LACK OF ENTITLEMENT TO LONG-TERM CARE BENEFITS; (2) FRAUD; (3) DECLARATORY JUDGMENT RE: VOIDING OF POLICY FOR FRAUDULENT CLAIM; AND (4) RESTITUTION** |

Plaintiff, Lincoln Benefit Life Insurance Company (hereinafter "Lincoln Benefit Life") alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiff Lincoln Benefit Life is a corporation organized and existing under the laws of the State of Nebraska. Its principal place of business is in Nebraska. Plaintiff is a citizen of the State of Nebraska. At all times relevant to this action, Lincoln Benefit Life has been properly licensed as an insurance company in the State of California.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3

- 1 -

CASE NO.: 2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT.
FRAUD & RESTITUTION

2.     Defendant Alexander Dallal ("Mr. Dallal") is an individual and citizen of the State of California, residing within the County of Los Angeles, State of California, and within the Central District of California.  Mr. Dallal, in conjunction with his co-defendant wife, submitted a claim for benefits under the joint long-term care policy at issue in this case.

3.     Defendant Claire Dallal ("Mrs. Dallal") is an individual and citizen of the State of California, residing within the County of Los Angeles, State of California, and within the Central District of California.  Mrs. Dallal holds the power of attorney for her husband and has acted on his behalf at all relevant times relating to the claim for benefits under the long-term care policy at issue.  She is also a co-insured under the joint long-term care policy.  Collectively, Mr. and Mrs. Dallal will be called "the Dallals," "the Dallal Defendants," or "Defendants".

4.     The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00, as more fully set forth below.  In particular, long-term care benefits brought into question by this action exceed the sum of $75,000.00.

5.     Because the parties to this action are diverse and because more than $75,000.00, exclusive of interest and costs, is at issue between the parties, 28 U.S.C. §§ 1332, 2201 and 2202 grants this Court jurisdiction over this action.

6.     The contract which is the subject of this action was entered into in the Central District of California.  A claim for long-term care benefits under the contract at issue was made by Defendants while residing in the Central District of California.  Venue is therefore proper within the Central District of California.

/ / /

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3                    - 2 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

7.     Plaintiff is unaware of the true names and capacities of defendants named herein as DOES 1 through 10 and has therefore named such defendants by such ficitious names.  Plaintiff will ask leave of court to amend the Complaint to state the true names and capacitites of the DOE defendants when the same are ascertained.

8.     Lincoln Benefit Life is informed and believes, and based upon such information and belief alleges, that each of the Defendants was acting as the agent of the other Defendant and in concert with one another with regard to all actions described herein, and is therefore liable for all relief and damages caused to Plaintiff.

## COMMON FACTS

### The Policy at Issue

9.     On or about August 20, 2003, Lincoln Benefit Life issued a joint Comprehensive Long Term Care Policy, number 10-700137639W, to both Mr. and Mrs. Dallal ("the Policy"), as co-insureds.  A true and correct copy of the Policy is attached hereto as Exhibit 1.  Mr. Dallal was the primary applicant and indicated that his occupation was that of a retail store owner.

10.     Subject to its terms, conditions, and limitations, the Policy provides nursing facility and residential care facility benefits, as well as home care benefits. Such benefits fall under "Qualified Long Term Care Services," which means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services and Maintenance of Personal Care Services which are required by Chronically Ill Individual and are provided pursuant to a Plan of Care preserved by a Licensed Health Care Practitioner."

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                - 3 -                CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

11.    This case involves the Dallals' claim for home care benefits under the Policy relating to their claim that Mr. Dallal was a Chronically Ill individual who required daily home care by a caregiver and that benefits under the Policy should be paid for that care.

12.    As a threshold requirement under the Policy, only a "Chronically Ill Individual" can pursue benefits.  A "Chronically Ill Individual means any individual who has been certified within the previous 12 months by a Licensed Health Care Practitioner as

a.    Being unable to perform, without substantial assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; or

b.    Requiring substantial supervision to protect such individual from threats to health and safety due to severe Cognitive Impairment."

13.    The Policy defines "Home Care Benefit," in relevant part, as follows: "Benefits payable for Home Care include benefits for the following: Home Health Care, Adult Day Care Personal Care, Homemaker Services, Hospice Services, and Respite Care.

'Home Health Care' means Qualified Long Term Care Services, including but not limited to skilled nursing or other professional services performed in your Home, part-time and intermittent skilled nursing services, home health aide services, physical therapy, occupational therapy or speech therapy and audiology services and medical social services by a social worker.

'Home' means your residence, including a rest home.  'Home' does not include a Nursing Facility, a Residential Care Facility, or a hospital.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3                              - 4 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

'Personal Care' means Qualified Long Term Care Services, including assistance with the Activities of Daily Living and Instrumental Activities of Daily Living, performed in your Home.

'Instrumental Activities of Daily Living' means using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, doing your laundry and light housekeeping.

'Homemaker Services' means Qualified Long Term Care Services, including assistance with activities necessary to or consistent with your ability to remain in your Home."

14.     Under the Policy, an insured can become eligible for Home Care Benefits in two ways.  He must be (1) "unable to perform without Substantial Assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity" ("ADL Option"); or (2) "require Substantial Supervision to protect yourself from threats to health and safety due to severe Cognitive Impairment" ("Cognitive Impairment Option").

15.     Benefits under the Policy are not payable for any confinement, treatment or services provided to an insured by an immediate family member or for which no charge is normally made in the absence of insurance.

16.     Under the ADL Option for benefit eligibility, the Policy requires that the Insured receive "Substantial Assistance" for at least two Activities of Daily Living, which means "Hands-on Assistance or Stand-By Assistance."  "Hands-On Assistance" requires the physical assistance of another person without which you would be unable to perform the Activity of Daily Living."  "Standby Assistance means the presence of another person within arm's reach of you that is necessary to

/ / /

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3                        - 5 -

CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

prevent, by physical intervention injury, to you while you are performing the Activity of Daily Living."

17.     Under the Policy, "Activities of Daily Living" mean:

"a.     Eating, which shall mean feeding oneself by getting food in the body from a receptacle (such as a plate, cup, or table) or by a feeding tube or intravenously.

b.     Bathing, which shall mean washing oneself by sponge bath or in either a tub or shower, including the act of getting into or out of a tub or shower.

c.     Continence, which shall mean the ability to maintain control of bowel and bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).

d.     Dressing, which shall mean putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.

e.     Toileting, which shall mean getting to and from the toilet getting on or off the toilet, and performing associated personal hygiene.

f.     Transferring, which shall mean the ability to move into or out of bed, a chair or wheelchair."

18.     Under the Cognitive Impairment Option for benefit eligibility, "Cognitive Impairment" means:

"the deterioration or loss of your intellectual capacity which requires substantial supervision by another person to protect yourself or others.

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3         - 6 -         CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

1   It is measured by clinical evidence and standardized tests which

2   reliably measure your impairment in:

3         a.      short or long term memory;

4         b.      orientation as to people, places or time; and

5         c.      deductive or abstract reasoning.

6   Cognitive Impairment includes Alzheimer's disease and similar

7   forms of irreversible dementia."

8

9   19.    As to the Cognitive Impairment Option for benefit eligibility, the

10  Insured must require "Substantial Supervision," which means "continual

11  supervision by another person is necessary to protect insured from threats to his or

12  her health or safety.  Such supervision may include cueing by verbal prompting,

13  gestures, or other demonstrations."

14

15  20.    In addition, the Policy requires the insured to satisfy the following

16  Conditions for Benefit Payment:

17  "1.    You are a Chronically Ill Individual; and

18  2.     You are receiving Home Care pursuant to a Plan of Care

19  prescribed by a Licensed Health Practitioner; and

20  3.     A Plan of Care as outlined in the policy is submitted to us

21  for review; and

22  4.     You have satisfied the Elimination Period shown in the

23  Policy Schedule; and

24  5.     You have not exceeded the Total Maximum Amount

25  Payable as shown in the Policy Schedule."

26

27  21.    The Policy requires submission of notice of a claim, ongoing claim

28  forms, and written proof of loss.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                    - 7 -          CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

22.     Provided that the terms and conditions of the Policy are met, Lincoln Benefit Life will only pay actual daily expenses up to the maximum daily benefit for Home Care Benefits.

**The Claim for Home Care Benefits**

23.     On or about April 5, 2004, Lincoln Benefit Life received notice that Mr. Dallal would be submitting a claim under the Policy, with the diagnosis and surgical removal of a benign meningioma.  Lincoln Benefit Life received claim forms reflecting that Mr. Dallal was receiving home health care from his caregiver, Helen Genovea.  Mrs. Dallal also submitted a power of attorney, representing she could and would act on Mr. Dallal's behalf.  Based on information provided, Lincoln Benefit Life approved Dallal's eligibility for payment of benefits commencing on April 29, 2004, with a check paid jointly to the Dallal Defendants.

24.     Lincoln Benefit Life sent claim forms, including Health Service Caregiver Activity Notes ("caregiver notes") with a Fraud Notice, to Mrs. Dallal for completion as part of the ongoing proof of loss required by the Policy.  In support of Mr. Dallal's claim, Lincoln Benefit Life received ongoing caregiver notes from April 2004 through December 5, 2016.  These reflected that his caregiver, Ms. Genovea, consistently assisted Mr. Dallal in such activities as bathing, toileting, dressing, laundry, medications, ambulation, preparing meals, and transferring.

25.     Over time, the caregiver notes submitted in support of the claim reflected an increasing level of care by Ms. Genovea, as well as increased charges for daily caregiving services.  As of December 5, 2016, the caregiver notes reflected that Ms. Genovea charged $265 per day for 12 hours of care, 7 days per week.

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                                   - 8 -

CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

26.     As part of the caregiver notes, Lincoln Benefit Life received a Fraud Notice purportedly signed by Ms. Genovea.  Each Fraud Notice clearly stated: "Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application or statement of claim for insurance is guilty of a crime and may be subject to fines and confinement in prison."

27.     Based on representations made and information gathered, Lincoln Benefit Life continued to jointly pay Defendants long-term care benefits up through and including December 5, 2016.  Total benefits paid by Lincoln Benefit Life to date amount to $761,225.89.

**<u>Lincoln Benefit Life Discovers The Dallal Defendants' Fraud</u>**

28.     In May 2016, Lincoln received an Attending Physician's Statement regarding Mr. Dallal's medical and cognitive status from Dr. Joy Feld.  She indicated that he required stand-by assistance with transferring, toileting, bathing, and dressing, and likewise had cognitive impairment.  He was independent in ambulation, continence, and eating.  The Statement reflected that he still required permanent supervision by a caregiver.

29.     This May 2016 Attending Physician Statement showed that Mr. Dallal actually *required less assistance* than Dr. Feld's Attending Physician Statement from the prior year.  Dr. Feld had previously advised that as of July 9, 2015, Mr. Dallal required *hands-on* assistance only for bathing, with *stand-by* assistance for all other activities of daily living, including ambulation, continence, dressing, eating, toileting, and transferring.

/ / /

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                                    - 9 -                     CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

30.     In further contrast to the medical information, the monthly caregiver notes that Lincoln Benefit Life had received from Defendants for that relevant period, reflected that Mr. Dallal required a much broader scope of assistance from his caregiver.  Specifically, the notes indicated Ms. Genovea gave Mr. Dallal assistance with transferring, toileting, ambulation, bathing, dressing, meals, and other services.  The caregiver notes certified that Ms. Genovea provided Mr. Dallal with daily home care services from 8:00 a.m. to 8:00 p.m.

31.     With these discrepancies, Lincoln Benefit commenced further investigation and asked a nurse representative to schedule a home assessment of Mr. Dallal.  During the June 23, 2016 visit at the Dallals' residence, Mrs. Dallal advised the nurse that the caregiver had the day off.  Mr. Dallal presented to the nurse as lethargic, drowsy, and barely able to open his eyes or respond to questions.  As such, Mrs. Dallal answered the nurse's questions regarding her husband.  According to Mrs. Dallal, Mr. Dallal required hands-on assistance for bathing/showering and dressing; hands-on assistance getting on and off the toilet; hands-on assistance moving in or out of a chair or bed; stand-by assistance for moving around inside the home; hands-on assistance moving around outside the home, as well as negotiating curbs, ramps, or uneven ground; assistance from ambulatory devices (cane, walker, or wheelchair) for mobility; and assistance with other daily activities, such as telephone use, grocery shopping, and meal preparation.

32.     As a result of this home visit and Defendants' representations, the nurse recommended that ongoing home care services were appropriate for Mr. Dallal for 12 hours a day, 7 days a week.

/ / /

/ / /

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3

- 10 -

CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

33.     The significant level of care and poor portrayal of Mr. Dallal during this visit appeared at odds with the information from Mr. Dallal's physician and the medical records.  Therefore, in July 2016, Lincoln Benefit Life requested surveillance services to further evaluate the claim.  Surveillance was obtained for the periods of July 25 through July 31, 2016, September 10 through September 16, 2016, and November 2 through November 5, 2016.

34.     The surveillance of Mr. Dallal completely contradicted the information provided by the Dallal Defendants and demonstrated that Mr. Dallal was an active, independent, and productive individual, who was receiving no home care and no assistance.  Not once in an 18-day time frame in three separate months of surveillance was Mr. Dallal's caregiver ever observed going to the Defendants' residence or spending a single moment with Mr. Dallal.  Rather, Mr. Dallal was regularly observed during the surveillance, among other things:

- working inside his clothing business on consecutive days during business hours;
- independently engaging in activities outside his shop, such as sweeping the walk in front of his store; interacting with customers and others; carrying trash bags and a cardboard box; walking to a dumpster to dispose of trash; independently locking up his store, and carrying bags from his store at the end of the work day;
- walking and standing independently, without difficulty or any assistance from a cane, walker, or wheelchair;
- moving about outdoors and visiting places on his own and without assistance;
- crossing the street on his own and without any assistance;
- transferring in and out of vehicles on his own and without any assistance;

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                    - 11 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

- transferring to and from a sitting position on his own and without any assistance;

- re-arranging and wiping down outdoor furniture by himself early one morning outside of a local eatery;

- walking up and down stairs independently;

- using a cell phone kept in a case on his belt at will and without any assistance;

- using keys kept on a chain on his belt;

- going to local eateries, both on his own and with family members;

- carrying bags and grocery items into his home, unassisted by family members;

- being alone, without supervision; and

- appearing well-groomed, alert, and interactive.

35.     During this time, Mrs. Dallal was observed with her husband while driving him to or from his tailoring business, working in the store, running errands, and eating at a restaurant.  Even if Mr. Dallal was observed with Mrs. Dallal or another apparent family member at some point, he was capable of taking off alone without supervision or assistance.  He would also remain at his business even if Mrs. Dallal left.

36.     For the same days on which surveillance was conducted, Defendants submitted caregiver activity notes to Lincoln Benefit Life in support of the claim for home care benefits under the Policy.  The caregiver notes represented that Mr. Dallal was receiving daily home care services from Ms. Genovea from 8:00 a.m. to 8:00 p.m. on the very days that surveillance demonstrated she was not with him and he was engaged in other activities without caregiving services.  These caregiver notes were signed by Mrs. Dallal on Mr. Dallal's behalf, and purportedly by Ms.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                    - 12 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

Genovea.  The caregiver notes included the Fraud Notice purportedly signed by Ms. Genovea.  Receipts submitted as proof of "actual" caregiving expenses also showed Mrs. Dallal paid Ms. Genovea in cash.

37.   Lincoln Benefit Life continued its investigation by confirming that contrary to the Dallals' representations and the caregiver notes that they had routinely submitted for payment of monthly home care benefits, Ms. Genovea has not been rendering services to Mr. Dallal for some time and that representations in the caregiver notes had long been falsified.

38.   In an interview with Ms. Genovea on November 5, 2016, she advised she had not worked for Mr. Dallal or spoken to the Dallals since some time in 2015. Significantly, Ms. Genovea stated:

(a)   she had never worked 12-hour shifts, 7 days a week at any point during her employment;

(b)   she had maybe only once worked 7 days straight, but that was after Mr. Dallal's surgery (in 2004);

(c)   she could not recall how many days or hours a week she worked because her schedule was different every week and her hours varied greatly;

(d)   when she did work, Mrs. Dallal paid her by check;

(e)   during the time period she cared for Mr. Dallal, his condition had improved, such that he sometimes would go to work and would even drive himself there, while she went grocery shopping or performed housekeeping;

(f)   in 2014, Mrs. Dallal called her to come over and put up the family's Christmas tree, but she did not care for Mr. Dallal at that time;

(g)   she was familiar with caregiver logs since she had used them for other employers, but she had never filled out a log or used her signature to verify the dates and hours she worked during her employment with the Dallals;

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3          - 13 -          CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

(h)     she had been working elsewhere; and

(i)     although she had received a recent call from Mrs. Dallal, she had not been able to meet with her due to work, but planned to see her later that weekend.

Ms. Genovea's representations were in direct contradiction to the caregiver notes and Fraud Notices submitted with her name on them and the Dallal Defendants' representations to Lincoln Benefit Life.

39.     Two days after this interview with Ms. Genovea, during a November 7, 2016 telephone call with Lincoln Benefit Life, Mrs. Dallal objected to its contact with the caregiver.  She stated that Ms. Genovea had been providing caregiving services to Mr. Dallal since 2004.  She also wanted all questions on the claim directed to her.

40.     Lincoln Benefit Life continued its investigation to address the discrepancies raised in the claim.  In the November 2016 call, as well as in a subsequent call with Lincoln Benefit Life on or about December 7, 2016, Mrs. Dallal insisted that Policy benefits were payable.  When Lincoln Benefit Life asked to meet with Mrs. Dallal about the claim, she declined.  She nonetheless advised that she was still going to submit caregiver notes to receive payment of benefits.  Mrs. Dallal also indicated that Ms. Genovea completed the monthly paperwork for the claim, after which time Mrs. Dallal would submit the forms to Lincoln Benefit Life.

41.     Lincoln Benefit Life has since further confirmed that Defendants have misrepresented and/or concealed Mr. Dallal's true capabilities and his alleged need for caregiving services identified on the caregiver notes.  An independent medical review by a neuropsychologist has confirmed that the file information, particularly

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                              - 14 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

Mr. Dallal's demonstrated activities on surveillance, is inconsistent with Cognitive Impairment or the need for Substantial Supervision or Substantial Assistance. Significant inconsistencies also exist between Mrs. Dallal's report of Mr. Dallal's functional capacities and his activities reflected on surveillance. Mr. Dallal also did not demonstrate neurological impairments, but displayed intact functional capacity without obvious neurological deficit to impede his Activities of Daily Living.

42. The nurse who conducted the home assessment on June 23, 2016, has reviewed the surveillance and confirmed that Mr. Dallal's behavior is inconsistent with the Dallals' representations upon which she based her prior recommendation for caregiver services. In addition to verifying the identities of Mr. and Mrs. Dallal on the surveillance, the nurse has determined that Mr. Dallal exhibited the ability to independently perform all Activities of Daily Living and Instrumental Activities of Daily Living, except driving which was not shown on film. Mr. Dallal also did not demonstrate any behaviors that would indicate cognitive impairment. Accordingly, the nurse has now advised Lincoln Benefit Life that Mr. Dallal does not require caregiver assistance.

43. Having uncovered that Mr. Dallal did not receive caregiving services from Ms. Genovea as stated in the caregiver notes submitted by the Dallal Defendants, verified Mr. Dallal's consistent and significant level of activity depicted in the surveillance, and discovered repeated misrepresentations and concealments by the Dallal Defendants in connection with their efforts to procure benefits under the Policy, Lincoln Benefit Life has concluded its investigation of Mr. Dallal's claim. Based upon this investigation, Lincoln Benefit Life has reasonably concluded that the Dallal Defendants have been knowingly committing insurance fraud in the claim for home care benefits. Lincoln Benefit Life informed the Dallals of its decision that benefits were not payable under the Policy of its

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                                      - 15 -

CASE NO.: 2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

1   intent to seek recovery and declaratory judgment by this lawsuit in a letter dated

2   December 16, 2016.

3

4        44.    The Dallal Defendants intentionally misrepresented and concealed Mr.

5   Dallal's caregiving services, actual level of care, health, abilities, and grounds for

6   payment of Policy benefits to Lincoln Benefit Life.  The Dallal Defendants

7   represented verbally and in writing that Mr. Dallal was receiving home care

8   services from Ms. Genovea, when she did not provide such assistance.  They knew

9   these representations were false because Mr. Dallal was not at home with his

10  caregiver, Ms. Genovea, and he was visualized elsewhere, unattended and

11  unassisted.  The Dallals likewise knew these representations were false because Ms.

12  Genovea had not been completing or signing the caregiver notes.

13

14       45.    The Dallal Defendants made these intentional misrepresentations and

15  omissions to defraud Lincoln Benefit Life and to induce Lincoln Benefit Life to pay

16  long-term care benefits under the Policy to which they were not entitled.

17

18       46.    At all times herein mentioned, Lincoln Benefit Life is informed and

19  believes the Dallal Defendants have jointly and severally provided inaccurate and

20  false information to Lincoln Benefit Life to wrongfully procure benefits under the

21  Policy.

22

23       47.    Lincoln Benefit Life reasonably relied on the Dallal Defendants'

24  misrepresentations and concealment when it paid checks jointly to the Dallals in the

25  total amount up to $761,225.89 through December 5, 2016.

26  / / /

27  / / /

28  / / /

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4826-5802-2204 v3                    - 16 -                CASE NO.:  2:16-CV-9307
                                                        COMPLAINT FOR DECL. JUDGMENT,
                                                              FRAUD & RESTITUTION

48.     At most, Lincoln Benefit Life reasonably believes that at a genuine dispute exists over whether Mr. Dallal is entitled to long-term care benefits under the Policy.

## FIRST CAUSE OF ACTION FOR DECLARTORY JUDGMENT RE: LACK OF ENTITLMENT TO LONG-TERM CARE BENEFITS
## (AGAINST DEFENDANT MR. DALLAL)

49.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 48 above, as though fully set forth herein.

50.     Defendants made representations and submitted claim materials in support of a claim for long-term care benefits pertaining to Mr. Dallal under the Policy.  Based thereon, Lincoln Benefit Life commenced and continued benefit payments continuously under the Policy since 2004.

51.     As a result of its investigation, Lincoln Benefit Life is informed and believes, and thereon alleges, that Mr. Dallal is not entitled and was not entitled to benefits under the terms and conditions of the Policy, and that he is not entitled to coverage for his claim.  Indeed, Plaintiff reasonably believes that Mr. Dallal has not been receiving home health care services by his stated caregiver, Ms. Genova, as represented in claim forms.  Plaintiff likewise believes he is not Chronically Ill, nor does he require Substantial Supervision or Substantial Assistance, pursuant to the terms and conditions of the Policy.

/ / /
/ / /
/ / /
/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                         - 17 -                         CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

52.     An actual dispute and controversy exists between Plaintiff Lincoln Benefit Life and Defendants.  Plaintiff contends that Mr. Dallal is not and was not entitled to long-term care benefits under the Policy.  Defendant Mr. Dallal, individually and through Mrs. Dallal, claims or may claim that he is so entitled to long-term care benefits under the Policy.

53.     Plaintiff Lincoln Benefit Life desires a judicial declaration of its rights and obligations under the Policy.

## SECOND CAUSE OF ACTION FOR FRAUD
## (AGAINST ALL DEFENDANTS)

54.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 53 above, as though fully set forth herein.

55.     As alleged above and incorporated herein by this reference, the Dallal Defendants intentionally made material misrepresentations and intentionally concealed material facts in connection with the claim for benefits under the Policy. Such misrepresentations and concealments related to eligibility for coverage, including, but not limited to, the caregiving services Mr. Dallal was reportedly receiving from Ms. Genovea, his level of care, his health, his activities, his abilities, his tolerances, and grounds for payment of benefits under the Policy.  The Dallals knowingly and willfully made these representations and omissions to induce Lincoln Benefit Life to pay a substantial amount of monies on the insurance claim. When the Dallals made representations to Lincoln Benefit Life, including, but not limited to, providing verbal representations, caregiver activity notes and Fraud Notices, and continuing proof of loss, the Dallals knew the representations were in fact false.

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                          - 18 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

56.     The Dallals made these intentional misrepresentations and omissions to defraud Lincoln Benefit Life and to induce it to rely on their misrepresentations and concealments and to pay benefits to which Mr. Dallal was not entitled.

57.     At the time Lincoln Benefit Life paid long-term care benefits under the Policy, it did not know that Defendants' representations were false, but believed them and justifiably relied on them.  Lincoln Benefit Life's justifiable reliance on the Dallals' misrepresentations and concealments was the direct and proximate cause of its harm.  Lincoln Benefit Life would not have paid benefits by joint checks to the Dallals if they had stated the true and complete facts.

58.     As a proximate result of Defendants' material misrepresentations and omissions as herein alleged, Lincoln Benefit Life was damaged in the amount of benefits paid based on such fraud, in excess of $75,000.00 and up to $761,225.89 as of this date, together with interest at the legal rate.  The Dallals also both received ongoing insurance coverage to which they were not entitled.  Lincoln Benefit Life expects to continue to suffer damages up until the time this Court and the trier of fact render its judgment regarding Defendants' conduct and representations.

## THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT - VOIDING OF POLICY FOR FRAUDULENT CLAIM (AGAINST ALL DEFENDANTS)

59.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in paragraphs 1 through 58 of this Complaint, as though fully set forth herein.

/ / /

/ / /

/ / /

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                - 19 -                CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

60.     In doing the things alleged herein, the Dallal Defendants intentionally, knowingly, and willfully misrepresented and/or concealed the truth about Mr. Dallal's claim, including, but not limited to, the caregiving services Mr. Dallal was reportedly receiving from Ms. Genovea, his level of care, his health, his activities, his abilities, his tolerances, and grounds for payment of benefits under the Policy. Said misrepresentations and concealments were made to support the claim for long-term care benefits under the Policy.

61.     The misrepresentations and/or concealments regarding the claim under the Policy were material to Lincoln Benefit Life's decision to pay monthly long-term care benefits.  The Dallals made these intentional misrepresentations and omissions to defraud Lincoln Benefit Life and to induce it to rely on their misrepresentations and concealments for payment of benefits to which Mr. Dallal was not entitled.

62.     At the time Lincoln Benefit Life paid long-term care benefits under the Policy, it did not know Defendants' representations were false, but believed them and reasonably relied on them.

63.     Lincoln Benefit Life is informed and believes that the Dallal Defendants have made further intentional, knowing and willful misrepresentations and/or concealments in the course of the claim for Policy benefits, of which Lincoln Benefit Life is currently unaware.

64.     Lincoln Benefit Life justifiably relied on the information Defendants submitted in support of the claim for long-term care benefits under the Policy. Lincoln Benefit Life would not have paid benefits to the Dallals had it known the true and complete facts.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                                    - 20 -                       CASE NO.:  2:16-CV-9307
                                                                                                      COMPLAINT FOR DECL. JUDGMENT,
                                                                                                      FRAUD & RESTITUTION

65.     At the time Lincoln Benefit Life received the information from the Defendants in support of the long-term care claim, and at the time benefit payments were made under the Policy, Lincoln Benefit had no reason to suspect that the information submitted was false, misleading or untrue.

66.     Only as the result of its recent investigation has Lincoln Benefit Life discovered that the information that the Defendants provided in support of the claim was false.

67.     An actual dispute exists between Plaintiff Lincoln Benefit Life and Defendants.  Lincoln Benefit Life contends that it is entitled to void the entire joint Policy issued to the Dallals by reason of their submission of the fraudulent claim relating to Mr. Dallal's claim for home care benefits.  Lincoln Benefit Life further contends that the facts demonstrate Mrs. Dallal was integrally involved in the submission of the fraudulent claim and is thus not an innocent co-insured.  The entire Policy, including her joint policy, should therefore be voided from the time that the fraud began.  On the other hand, Defendants dispute, or may dispute, Lincoln Benefit Life's voiding of the Policy in its entirety.

68.     Plaintiff Lincoln Benefit Life therefore desires a judicial declaration of its rights and obligations under the Policy, including voiding of the joint Policy.

## FOURTH CAUSE OF ACTION FOR RESTITUTION
## (AGAINST ALL DEFENDANTS)

69.     Plaintiff refers to and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 68 above, as though fully set forth herein.

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                                      - 21 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

70.     Lincoln Benefit Life has paid jointly to the Defendant Dallals sums under the Policy, representing long-term care benefits which were believed to be due and payable under the Policy.  Said benefits were paid before Lincoln Benefit knew, or had reason to know, that Mr. Dallal was not entitled to home care benefits, or whether the Dallals made false and fraudulent representations and omissions regarding his claim for benefits under the Policy.

71.     By reason of the above, the monies Plaintiff paid represent an overpayment to Defendants if Mr. Dallal is not and/or was not entitled to long-term care benefits within the terms and  provisions of the Policy, and/or if a fraudulent claim for benefits was made for benefits under the Policy.   Defendants should not unjustly enriched by their conduct.

72.     Lincoln Benefit Life seeks this Court's order that the Dallal Defendants shall restore to Lincoln Benefit Life all of the benefits they wrongfully received from Lincoln Benefit Life, plus future Policy benefits paid, if any, together with interest thereon.

73.     Lincoln Benefit Life seeks this Court's order for further just and proper relief.

WHEREFORE, Lincoln Benefit Life prays for Judgment against the Dallal Defendants, and Does 1 through 10 and each of them, as follows:

1.     Under the First Cause of Action, for a declaration by this Court that Defendant Mr. Dallal is not and has not been qualified for benefits under the Policy, and is not entitled to benefits under the Policy;

/ / /

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3                         - 22 -                    CASE NO.:  2:16-CV-9307
COMPLAINT FOR DECL. JUDGMENT,
FRAUD & RESTITUTION

2.    Under the Second Cause of Action, for damages according to proof for fraud;

3.    Under the Third Cause of Action, for a declaration by this Court that Defendants submitted a fraudulent claim for benefits under the Policy, thereby entitling Lincoln Benefit Life to void the entire Policy issued to Mr. Dallal and Mrs. Dallal as of the time the fraud began, and that the Defendants therefore have no rights or entitlements under the Policy;

4.    Under the Fourth Cause of Action, for a judgment of restitution against Defendants for all overpaid long-term care benefits, with pre-judgment and post-judgment interest thereon.

5.    For attorneys' fees and costs incurred herein;

6.    For pre-judgment interest; and

7.    For such further relief the Court deems just and proper.

Dated:    December 16, 2016        BURKE, WILLIAMS & SORENSEN, LLP
                                   Melissa M. Cowan
                                   Edith S. Shea


                                   By: /s/ Melissa M. Cowan
                                   Melissa M. Cowan
                                   Attorneys for Plaintiff Lincoln Benefit
                                   Life Insurance Company

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4826-5802-2204 v3        - 23 -        CASE NO.:  2:16-CV-9307
                                           COMPLAINT FOR DECL. JUDGMENT,
                                           FRAUD & RESTITUTION