# COMPREHENSIVE LONG TERM CARE POLICY

**Read this policy carefully. It is a legal contract between you and us.**

> THIS POLICY IS AN APPROVED LONG-TERM CARE INSURANCE POLICY UNDER STATE INSURANCE REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

> This contract for long-term care insurance is intended to be a federally qualified long-term care insurance contract and may qualify you for federal and state tax benefits.

**NOTICE TO BUYER:** This policy may not cover all of the costs associated with long term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully all policy limitations.

**CAUTION:** The issuance of this Long Term Care Insurance Policy is based upon your responses to the questions on your application. A copy of your application is enclosed. If your answers are misstated or untrue, the Company may have the right to deny benefits or rescind your policy. The best time to clear up any questions is now, before a claim arises! If, for any reason, any of your answers are incorrect, contact the Company at this address: Lincoln Benefit Life Company, P.O. Box 4243, Woodland Hills, CA 91365-4243.

This policy provides benefits for Qualified Long Term Care Services as defined herein, subject to all terms and provisions. In this policy, Lincoln Benefit Life Company will be referred to as "we", "us", or "our". The Insured(s) named in the Policy Schedule will be referred to as "you" or "your".

THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

RENEWAL PROVISION — This policy is guaranteed renewable for life. Premiums are subject to change. You may renew this policy for the rest of your life. To renew, just pay the premium due. It must be paid on or before the due date or within the grace period. We cannot refuse to renew this policy or place any restrictions on it if the premium is paid on time. We can only change the premium for this policy if we change premiums for everyone with this policy form in your state. We will give you at least 31 days written notice at your last address shown in our records before we change your premium.

YOUR 30 DAY RIGHT TO EXAMINE YOUR POLICY — If you are not satisfied with your policy, you may return it to us or our agent within 30 days after you receive it. We will then refund any premium you have paid within 30 days of our receipt of the policy and the policy will be considered to be void from its beginning.

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.

Michael J. Velotta
Secretary

Gene Wraith
President

**LINCOLN BENEFIT LIFE COMPANY**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110
A Legal Reserve Stock Life Insurance Company

EXHIBIT 1                                                                    24

# GUIDE TO YOUR POLICY

Page

Renewal Provision . . . . . . . . . . . . . . . . . . . . . . . . . 1

Your 30 Day Right to Examine Your Policy . . . . . . . . . . . . . . . . . . . . 1

Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . 3

Insuring Agreement and Effective Date . . . . . . . . . . . . . . . . . . 4

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Benefit Provisions . . . . . . . . . . . . . . . . . . . . . . 4

    Nursing Facility and Residential Care Facility Benefit . . . . . . . . . . 4

    Extension of Nursing Facility Benefits . . . . . . . . . . . . . . . . 6

    Nursing Facility Bed Reservation Benefit . . . . . . . . . . . . . . . 6

    Waiver of Premium Benefit . . . . . . . . . . . . . . . . . . . . 7

    Home Care Benefit . . . . . . . . . . . . . . . . . . . . . . 7

    Lowering Premiums by Reducing Benefits . . . . . . . . . . . . . . . 8

    Increasing Your Benefits. . . . . . . . . . . . . . . . . . . . . 9

    Availability of New Benefits or Eligibility Criteria . . . . . . . . . . . 9

    Personal Care Advisor . . . . . . . . . . . . . . . . . . . . . 9

    Restoration of Benefits . . . . . . . . . . . . . . . . . . . . . 9

    Total Maximum Amount Payable . . . . . . . . . . . . . . . . . . 9

Limitations or Conditions on Eligibility for Benefits . . . . . . . . . . . . . . 9

    General Exclusions . . . . . . . . . . . . . . . . . . . . . . 9

    Pre-existing Conditions Limitation . . . . . . . . . . . . . . . . . 10

    Elimination Period . . . . . . . . . . . . . . . . . . . . . . 10

General Policy Provisions . . . . . . . . . . . . . . . . . . . . . 10

Claim Provisions . . . . . . . . . . . . . . . . . . . . . . . 11

Other Policy Provisions . . . . . . . . . . . . . . . . . . . . . 12

EXHIBIT 1                                                                                              25

 

## POLICY SCHEDULE

INSURED:   Alexander J Dallal          POLICY NUMBER: 10-700137639W

INSURED:   Claire A Dallal            INSURING AGE:  62

### PREMIUM INFORMATION

PREMIUM:  Monthly          $310.69     PREMIUM PAYING PERIOD: Lifetime

The following shows the premiums for your policy and any optional riders you have selected:

| | EFFECTIVE DATE | PREMIUM |
|---|---|---|
| Comprehensive Long Term Care Policy, LB-6302-P-2-CA(Q) | 8/20/2003 | $199.16 |
| Compound Benefit Increase Rider, LB-6301-R4-2-CA | 8/20/2003 | $111.53 |
| Total Premium:  Monthly | | $310.69 |

Dated 08 /20 /2003  this Benefit Schedule replaces any previously issued Benefit Schedules.

### BENEFIT INFORMATION

ALL BENEFITS, ELIMINATION PERIODS, AND THE TOTAL MAXIMUM AMOUNTS PAYABLE SHOWN BELOW APPLY TO EACH INSURED INDIVIDUALLY

ELIMINATION PERIOD:                    30 Days

| BENEFIT | DAILY BENEFIT AMOUNT |
|---|---|
| Nursing Facility and Residential Care Facility | $150 |
| Home Care: Services for Home Health Care, Adult Day Care, Personal Care, Homemaker Services, Hospice Care and Respite Care are payable at actual expenses incurred up to | $150 per day |
| TOTAL MAXIMUM AMOUNT PAYABLE: | Unlimited |

YOU MAY CONTACT YOUR PERSONAL CARE ADVISOR BY CALLING 1-888-503-8110

LB-6302-P-2-CA(Q)                #6302CA1.030820.2011.DS0410      Page 3

EXHIBIT 1                                                                 26

## PART 1: INSURING AGREEMENT AND EFFECTIVE DATE

We promise to pay the benefits described in this policy. The payment of these benefits is subject to all of the definitions, limitations, and provisions of this policy. We make this promise and issue this policy in consideration of: (1) the statements made in your signed application, a copy of which is attached and made part of this policy; and (2) payment of the initial premium. This policy takes effect on the Effective Date shown in the Policy Schedule and continues in force as long as premiums are paid in accordance with the Renewal Provision.

## PART 2: DEFINITIONS

"Family" means a person's spouse, child, parent, brother or sister. The term spouse includes a common law marriage, if recognized in the state where you reside.

"Insured" means the person(s) shown in the Policy Schedule. The Insured(s) will be referred to in the policy as "you" or "your".

"Medicare" means the Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965 as then constituted or later amended.

"Pre-existing Condition" means a condition for which medical advice or treatment was recommended by, or received from, a provider of health care services during the 6 months immediately prior to the effective date of coverage under your policy.

## PART 3: BENEFIT PROVISIONS

### A. NURSING FACILITY AND RESIDENTIAL CARE FACILITY BENEFIT

We will pay the Nursing Facility and Residential Care Facility Benefit shown in the Policy Schedule.

Eligibility for Benefit Payment — You will be Eligible for Benefits for Qualified Long Term Care Services if:

1. You are unable to perform, without Substantial Assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; or

2. You require Substantial Supervision to protect yourself from threats to health and safety due to severe Cognitive Impairment.

"Qualified Long Term Care Services" means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services and Maintenance or Personal Care Services which are required by a Chronically Ill Individual and are provided pursuant to a Plan of Care prescribed by a Licensed Health Care Practitioner.

"Maintenance or Personal Care Services" means any care, the primary purpose of which is the provision of needed assistance with any of the disabilities, as a result of which the individual is a Chronically Ill Individual (including the protection from threats to health and safety due to severe Cognitive Impairment).

"Substantial Assistance" means Hands-on Assistance or Standby Assistance.

"Hands-on Assistance" means the physical assistance of another person without which you would be unable to perform the Activity of Daily Living.

"Standby Assistance" means the presence of another person within arm's reach of you that is necessary to prevent, by physical intervention, injury to you while you are performing the Activity of Daily Living.

"Functional Capacity" means requiring the Substantial Assistance of another person to perform the prescribed Activities of Daily Living.

EXHIBIT 1                                                    27

"Activities of Daily Living" are:

a.  Eating, which shall mean feeding oneself by getting food in the body from a receptacle (such as a plate, cup, or table) or by a feeding tube or intravenously.

b.  Bathing, which shall mean washing oneself by sponge bath or in either a tub or shower, including the act of getting into or out of a tub or shower.

c.  Continence, which shall mean the ability to maintain control of bowel and bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).

d.  Dressing, which shall mean putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.

e.  Toileting, which shall mean getting to and from the toilet, getting on or off the toilet, and performing associated personal hygiene.

f.  Transferring, which shall mean the ability to move into or out of bed, a chair or wheelchair.

"Substantial Supervision" means that continual supervision by another person is necessary to protect insured from threats to his or her health or safety. Such supervision may include cueing by verbal prompting, gestures or other demonstrations.

"Cognitive Impairment" means the deterioration or loss of your intellectual capacity which requires substantial supervision by another person to protect yourself or others. It is measured by clinical evidence and standardized tests which reliably measure your impairment in:

a.  short or long term memory;

b.  orientation as to people, places or time; and

c.  deductive or abstract reasoning.

Cognitive Impairment includes Alzheimer's disease and similar forms of irreversible dementia.

Conditions for Benefit Payment — We will pay benefits for Nursing Facility and Residential Care Facility confinement if:

1.  You are a Chronically Ill Individual; and

2.  You are confined in a Nursing Facility or Residential Care Facility pursuant to a Plan of Care prescribed by a Licensed Health Practitioner; and

3.  A Plan of Care as outlined in the policy is submitted to us for review; and

4.  Your confinement begins while this policy is in force; and

5.  You have not exceeded the Total Maximum Amount Payable as shown in the Policy Schedule; and

6.  You have satisfied the Elimination Period shown in the Policy Schedule; and

7.  You are not receiving payments for any other benefits under this policy.

"Nursing Facility" means a facility engaged primarily in providing ongoing care and related services in one location, and is licensed in California as a Nursing Facility; and

a.  is a separate facility or a distinct part of another health care facility; and

b.  provides 24-hour per day nursing care; and

c.  provides as a minimum, physician, skilled nursing, dietary and pharmaceutical services and an activity program.

Services may also be performed in a facility, other than a hospital, applicable to the laws of another state, outside of California and which meets the criteria described above for Nursing Facility.

"Residential Care Facility" means a facility engaged primarily in providing ongoing care and related services in one location, and is licensed in California as a Residential Care Facility or a residential care facility for the elderly.

Services may also be performed in a facility, other than a hospital, applicable to the laws of another state, outside of California and which meet the following criteria:

**EXHIBIT 1**

28

a. provides ongoing care and related services sufficient to support needs resulting from impairments in Activities of Daily Living or cognitive ability; and

b. provides care and services on a 24 hour basis; and

c. has a trained and ready-to-respond employee on duty in the facility at all times to provide care and services; and

d. provides three meals a day and accommodates special dietary needs; and

e. has agreements to ensure that residents receive the medical services of a physician or nurse in case of emergency; and

f. has appropriate methods and procedures to provide necessary assistance to residents in the management of prescribed medications.

"Chronically Ill Individual" means any individual who has been certified within the previous 12 months by a Licensed Health Care Practitioner as:

a. Being unable to perform, without substantial assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; or

b. Requiring substantial supervision to protect such individual from threats to health and safety due to severe Cognitive Impairment.

"Licensed Health Care Practitioner" means any:

a. physician (as defined in section 1861(r)(1) of the Social Security Act); or

b. Registered Professional Nurse;

c. Licensed Social Worker; or

d. Other individuals whom the Secretary of the United States Department of the Treasury may prescribe by regulation.

The Licensed Health Care Practitioner must not be a member of your Family.

"Registered Professional Nurse" (R.N.) means a duly licensed nurse acting within the scope of his or her license at the time the treatment or service is performed.

"Licensed Social Worker" means a duly licensed social worker acting within the scope of his or her license at the time the treatment or service is performed.

"Plan of Care" means a written plan prescribed by a Licensed Health Care Practitioner in consultation with you, based upon an assessment indicating that you are a Chronically Ill Individual. The Plan of Care will recommend the necessary services to be performed and in addition will specifically identify the frequency and type of care most suitable to meet your needs, as well as the most appropriate providers for such care, and the cost, if any.

"Elimination Period" means the number of days you must be confined in a Nursing Facility, a Residential Care Facility, be receiving Home Care, or any combination of these before benefits become payable under this policy. Your Elimination Period is shown in the Policy Schedule. The Elimination Period is required only once under this policy. No Future Elimination Period will be required once you have satisfied the Elimination Period shown in the Policy Schedule. Days may be accumulated under separate confinements in order to satisfy the Elimination Period.

B. EXTENSION OF NURSING FACILITY BENEFITS

Termination of this policy will not terminate any benefits payable for any Nursing Facility confinement if such confinement begins while this policy is in force and continues without interruption after termination. Any benefits payable under this provision are subject to: the Total Maximum Amount Payable; any applicable Elimination Period; and all other provisions of this policy.

C. NURSING FACILITY BED RESERVATION BENEFIT

We will pay a benefit equal to the Daily Benefit Amount for Nursing Facility shown in the Policy Schedule if:

1. You are a Chronically Ill Individual requiring Qualified Long Term Care Services; and

2. You are receiving benefit payments under this policy for Nursing Facility confinement; and

3. You require hospitalization while confined in a Nursing Facility; and

EXHIBIT 1                                                              29

4.  You incur charges to reserve your bed in the Nursing Facility during your hospitalization; and

5.  You have not exceeded the Total Maximum Amount Payable shown in the Policy Schedule.

Limitation: The Nursing Facility Bed Reservation Benefit is limited to 21 days per calendar year.

### D.  WAIVER OF PREMIUM BENEFIT

We will waive the payment of any premiums that become due for the policy and any attached riders after you have been confined in a Nursing Facility or a Residential Care Facility for a period of 60 calendar days and you are a Chronically Ill Individual. The 60 days need not be consecutive, but must be satisfied during a single claim period. The premium will be waived according to the mode of payment in effect at the time confinement begins. Premium payments will again become payable on the next renewal date following the end of your confinement. Once your confinement ends, any subsequent confinement separated by a period of at least 180 consecutive days will be considered a new claim period, subject to a new 60 calendar day waiting period for waiver of premium.

### E.  HOME CARE BENEFIT

Benefits payable for Home Care include benefits for the following:

Home Health Care, Adult Day Care, Personal Care, Homemaker Services, Hospice Services, and Respite Care.

"Home Health Care" means Qualified Long Term Care Services, including but not limited to skilled nursing or other professional services performed in your Home, part-time and intermittent skilled nursing services, home health aid services, physical therapy, occupational therapy, or speech therapy and audiology services and medical social services by a social worker.

"Home" means your residence, including a rest home. "Home" does not include a Nursing Facility, a Residential Care Facility or a hospital.

"Adult Day Care" means Qualified Long Term Care Services on a less than 24-hour basis, provided in a licensed facility outside of your Home for maintenance and personal services, supervision, protection or assistance in sustaining daily needs, including , bathing, continence, dressing, eating, toileting, transferring and taking medications.

"Personal Care" means Qualified Long Term Care Services, including assistance with the Activities of Daily Living and Instrumental Activities of Daily Living, performed in your Home.

"Instrumental Activities of Daily Living" means using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, doing your laundry and light housekeeping.

"Homemaker Services" means Qualified Long Term Care Services, including assistance with activities necessary to or consistent with your ability to remain in your Home.

"Hospice Services" means Qualified Long Term Care Services, including outpatient services not paid by Medicare which are provided through a licensed hospice, that are designed to provide: palliative care; alleviate physical, emotional, social and spiritual discomforts you may experience during the last phases of life due to the existence of a terminal disease; and to provide supportive care to your primary care giver and your family.

"Hospice Care Facility" means a place which:

a.  is licensed under state law to perform the services it is providing, where such licensing is required; and

b.  provides Hospice Care.

"Respite Care" means Qualified Long Term Care Services provided on a short term basis in an institution, in the Home or in a community-based program which are designed to relieve the primary care giver. Benefits paid for Respite Care are subtracted from the Total Maximum Amount Payable.

EXHIBIT 1

30

<u>Eligibility for Benefit Payment</u> — You will be Eligible for Benefits for Qualified Long Term Care Services if:

1. You are unable to perform, without Substantial Assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; or

2. You require Substantial Supervision to protect yourself from threats to health and safety due to severe Cognitive Impairment.

We will pay your actual daily expenses incurred up to the Maximum Daily Benefit for: Home Health Care, Adult Day Care, Personal Care, Homemaker Services and Hospice Services, as shown in the Policy Schedule. For Respite Care we will pay your actual daily expenses incurred for Qualified Long Term Care Services, including Nursing Facility or Residential Care Facility or your actual daily expenses incurred for Home Care, up to the Maximum Daily Benefit, as shown in the Policy Schedule.

Limitation: Respite Care is limited to 14 days per calendar year.

<u>Conditions for Benefit Payment</u> — We will pay benefits if:

1. You are a Chronically Ill Individual; and

2. You are receiving Home Care pursuant to a Plan of Care prescribed by a Licensed Health Practitioner; and

3. A Plan of Care as outlined in the policy is submitted to us for review; and

4. You have satisfied the Elimination Period shown in the Policy Schedule; and

5. You have not exceeded the Total Maximum Amount Payable as shown in the Policy Schedule.

<u>Eligible Providers</u> — Services may be provided by, but are not limited to, an employee of a licensed Home Health Agency who is qualified through experience and/or training to perform such services, or any skilled or unskilled person who is duly licensed to perform such services where licensing is required.

Home Health Care, Adult Day Care, Personal Care, Homemaker Services, Hospice Services and Respite Care are not payable for expenses incurred for services or items to the extent that such expenses are reimbursable under Medicare or would be so reimbursable but for the application of a deductible or coinsurance amount.

F. LOWERING PREMIUMS BY REDUCING BENEFITS

Upon renewal of your policy, after your coverage has been in force for one year, you have the option to reduce the premiums under your current coverage, subject to the minimum Daily Benefit available, by selecting one of the following three options:

1. Reducing the Total Maximum Amount Payable as shown in your policy schedule; or

2. Reducing the Daily Benefit amount for Nursing Facility and Residential Care Facility Benefit and/or the Home Care Maximum Daily Benefit amount shown in your policy schedule; or

3. Converting this Comprehensive Long Term Care Policy to a policy providing Nursing Facility and Residential Care Facility Only.

The premium rate for your reduced coverage will be based upon your age on the date your policy was originally issued and also the premium rate in effect on that date.

In the event your policy is about to lapse due to nonpayment of premium, we will notify you of the three options described above, which will become available to you in order to reduce your coverage. This notice will be sent to you at least 30 days before your policy is cancelled for non-payment of premium.

In the event the premium rates are increased for everyone with this policy form in your state, you have the option to reduce your coverage under any of the three options described above.

**EXHIBIT 1**

## G. INCREASING YOUR BENEFITS

After your coverage has been in force for one year, and on each policy anniversary thereafter, you have the option to increase your current coverage, subject to the maximum Daily Benefit amount available by selecting one of the following two options:

1. Increasing your Total Maximum Amount Payable; or
2. Increasing your Daily Benefit amount for Nursing Facility and Residential Care Facility Benefit and/or the Home Care Maximum Daily Benefit amount.

The option you select to increase your coverage may be based upon your attained age at the time benefits are increased. The amount of the increase in your coverage will be subject to evidence of your insurability. The option to increase benefits must be made by written request to us, within 30 days of the date of your policy anniversary.

## H. AVAILABILITY OF NEW BENEFITS OR ELIGIBILITY CRITERIA

In the event that we develop a new benefit or new eligibility criteria for benefits, that were not available under your existing policy, we will provide you with notification of these enhancements. Such notice will be sent to you within 12 months of availability and will include an offer to obtain the available enhancement.

We will not provide any enhancements described above if you are: (a) presently receiving benefits under the policy or attached riders; or (b) currently eligible to receive benefits, subject to meeting the elimination period shown in your policy schedule.

## I. PERSONAL CARE ADVISOR

A Personal Care Advisor is available to assist you with questions regarding such matters as:

1. Eligibility for benefits;
2. Appropriate level of care;
3. Availability of facilities and other care and service resources in your area; or
4. Any other questions you may have about a claim for benefits.

You can contact your Personal Care Advisor by calling the toll-free number shown in the Policy Schedule.

## J. RESTORATION OF BENEFITS

This provision only applies when the Total Maximum Amount Payable shown in the Policy Schedule is other than unlimited. Restored benefits are limited to twice the Total Maximum Amount Payable.

Benefits for a single claim cannot exceed the Total Maximum Amount Payable shown in the Policy Schedule. However, should you recover and you are not a Chronically Ill Individual for at least 180 consecutive days, your Total Maximum Amount Payable will be restored.

## K. TOTAL MAXIMUM AMOUNT PAYABLE

Your Total Maximum Amount Payable is shown in the Policy Schedule. The total of all benefit payments under your policy and any attached riders may not exceed this amount. Your coverage will end after the Total Maximum Amount Payable has been paid.

## PART 4: LIMITATIONS OR CONDITIONS ON ELIGIBILITY FOR BENEFITS

## A. GENERAL EXCLUSIONS

This policy does not cover any confinement, treatment or services:

1. Due to intentionally self-inflicted injury;
2. Due to attempted suicide while sane or insane;
3. For drug addiction or alcoholism;
4. Due to your participation in a felony, riot or insurrection;
5. Provided outside of the United States or Canada;
6. Provided in a government facility, unless otherwise required by law, or for which benefits are available under other governmental programs (except Medi-Cal or Medicaid);
7. Provided under any state or federal workers' compensation, employer's liability or occupational disease law, or any motor vehicle no-fault law;
8. Provided by a member of your immediate Family; or
9. For which no charge is normally made in the absence of insurance.

EXHIBIT 1

32

B. PRE-EXISTING CONDITIONS LIMITATION

We will not pay benefits for a loss due to a Pre-existing Condition if the loss begins during the first 6 months after the effective date of coverage under your policy. However, if a Pre-existing Condition is disclosed on your application and you otherwise qualify for benefits, benefits will be paid for such a loss.

If this policy is replacing another long term care policy or certificate, we will waive any time periods applicable to Pre-existing Conditions for similar benefits to the extent that similar exclusions have been satisfied under the original policy.

C. ELIMINATION PERIOD

No benefits are payable under this policy until satisfaction of the Elimination Period shown in the Policy Schedule.


**PART 5: GENERAL POLICY PROVISIONS**

A. ENTIRE CONTRACT; CHANGES — This policy and any attachments, plus the application is the entire contract between you and us. No agent may change it in any way. Only one of our officers can approve a change. Any change must be shown on your policy and approved in writing.

B. INCONTESTABILITY — If this policy has been in force for less than six (6) months we may rescind this policy or deny an otherwise valid claim upon a showing of misrepresentation that is material to the acceptance for coverage.

If this policy has been in force for at least six (6) months, but less than (2) years, we may rescind this policy or deny an otherwise valid claim upon a showing of misrepresentation that is both material to the acceptance for coverage and which pertains to the condition for which benefits are sought.

After this policy has been in force for two (2) years it is not contestable upon the grounds of misrepresentation alone. Such policy may be contested only upon a showing that the Insured knowingly and intentionally misrepresented relevant facts relating to the Insured's health.

C. GRACE PERIOD — Your policy has a 31 day grace period. If a premium is not paid on or before the due date, you may pay it during the grace period. Your policy will stay in force for this 31 day grace period before lapsing.

Upon expiration of this 31 day grace period, we will provide written notice to you and an individual designated by you to receive a notice of non-payment of premium. Such notice will be sent at least 30 days before cancellation of your coverage.

D. POLICY TERMINATION — This policy will terminate and your coverage will end on the earliest of the following events to occur:

1. After we have paid the Total Maximum Amount Payable shown in the Policy Schedule;
2. Your policy lapses due to nonpayment of premium;
3. The effective date of cancellation of this policy when cancellation is requested by you as described under PART 7F., REFUND OF UNEARNED PREMIUM; or
4. The date of your death.

E. REINSTATEMENT — Your policy will lapse if the premium is not paid before the end of the grace period. If we receive evidence satisfactory to us that you have a Cognitive Impairment or loss of Functional Capacity, we will reinstate your policy without requiring an application, upon payment of all past due and unpaid premiums, at any time within 6 months of the date your last premium payment was due. Otherwise, if we later accept your premium without requiring an application for reinstatement, that payment will put your policy back in force. If we require an application, we will give you a conditional receipt for your premium. Your policy will be reinstated upon our approval of such application or, lacking such approval, on the 45th day following the date of the conditional receipt, unless we have previously notified you in writing of our disapproval of the application.

EXHIBIT 1                                                                    33

The reinstated policy will cover only a loss for sickness incurred more than 10 days after the date of reinstatement. For an accident, you will be covered only for an injury sustained after the date of reinstatement. In all other respects, both you and we shall have the same rights that existed just before the due date of the premium in default, subject to any provisions noted on or attached to the reinstated policy.

## PART 6: CLAIM PROVISIONS

A.  NOTICE OF CLAIM — You must give us written notice of claim within 30 days after your loss or as soon as reasonably possible. You may give notice or you may have someone do it for you. The notice should give your name and policy number, which is shown on the Policy Schedule. The notice should be mailed to us at our Administrative Office or to one of our agents.

B.  CLAIM FORMS — When we receive your notice of claim, we will send you forms for filing proof of loss. If we do not send you these forms in 15 days, you may meet the proof of loss rule by giving us a written statement of the nature and extent of your loss within the time limit stated in the Proof of Loss section.

C.  PROOF OF LOSS — You must give us written proof of loss, in the case of a claim for loss for which this policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which we are liable. For any other loss, you must furnish written proof within 90 days after the date of such loss. If it is not reasonably possible to give us this timely proof, we will not reduce or deny your claim if proof is filed as soon as reasonably possible. In any event, proof must be furnished within 12 months from the time proof is otherwise required, unless legal capacity is absent.

D.  TIME OF PAYMENT OF CLAIMS — Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon our receipt of due written proof of such loss. Subject to due written proof of loss, all accrued benefits payable for loss for which this policy provides periodic payment will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon our receipt of due written proof.

E.  PAYMENTS OF CLAIMS — All benefits will be paid to you, your Beneficiary or your assignee. If no Beneficiary designation is in effect upon your death, any benefits unpaid at your death may be paid to your estate. If benefits are payable to your estate, we may pay up to $1,000 to any relative of yours by blood or marriage whom we find is entitled to it. Any payment made in good faith will discharge us with regard to such payment.

F.  BENEFIT APPEALS — If we deny your claim and do not pay benefits under this policy, you or your representative may appeal such denial. You or your representative must send us a written request for an appeal which may include any supporting material. We will review your request and notify you or your representative of our decision within 30 days of receiving the request.

G.  RIGHT OF RECOVERY — If we make an error in processing your claim, we have the right to recover any overpayment of benefits made to you. We will recover by offset any amounts which have not been previously recovered at the time we make another benefit payment.

H.  PHYSICAL EXAMINATION — We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending or you are receiving benefits.

I.  LEGAL ACTION — No legal action may be brought to recover on this policy before 60 days from the date written proof of loss has been given to us as required by this policy. No such action may be brought more than 3 years after the date written proof of loss is given to us.

EXHIBIT 1                                                   34

J.  BENEFICIARY — The Beneficiary will be the person or persons named in the application or changed by written request to receive any benefit payments due upon your death. The Beneficiary's consent is not required for this or any other change in the policy, unless the designation of the Beneficiary is irrevocable. You can change the Beneficiary at any time by giving us written notice. A new Beneficiary designation will be effective on the date you sign the written request for the change. We will not be liable for any action taken or payment made, unless, before such payment is made, we record notice of any Beneficiary change, at our mailing address.

If you designate more than one person as Beneficiary, the interests of all Beneficiaries will be equal unless your designation specifically provides otherwise. The share of any Beneficiary who does not survive, shall pass equally to the surviving Beneficiaries, unless your designation specifically provides otherwise. If no Beneficiary is designated or no Beneficiary survives you, then your estate will be the Beneficiary.

## PART 7: OTHER POLICY PROVISIONS

A.  OWNER — The Owner of this policy is the insured unless otherwise provided in the application or changed by written request. While the insured (or either insured if joint coverage) is living, the Owner may exercise every right and receive every benefit provided by this policy. If an Owner other than the insured dies while the insured is living, all rights of that Owner shall belong to the Owner's executors or administrators unless otherwise provided.

B.  MISSTATEMENT OF AGE — If your age was misstated in the application, all benefits payable will be those that the premium would have bought at your correct age. Furthermore, if no coverage would have been provided based on your true age, our liability will be limited to a refund of any premium paid for such coverage.

C.  UNPAID PREMIUM — Any premium due and unpaid or covered by a note or written order may be deducted from any claim payment payable under this policy.

D.  CONFORMITY WITH STATE STATUTES — Any provision of this policy, which on its effective date, is in conflict with the statutes of the state in which you reside on such date, is hereby amended to conform with the minimum requirements of such statutes.

E.  ASSIGNMENT — No assignment of interest under your policy shall be binding upon us unless the original or a copy of the assignment is filed with us at our Administrative Office shown on Page 1 of this policy. We do not assume any responsibility for the validity of an assignment.

F.  REFUND OF UNEARNED PREMIUM — Upon your death, we will refund any unearned premium for this policy on a pro-rata basis. We will make this refund within 30 days of receipt of proof of your death.

You may cancel your policy upon written request to us. Cancellation will be effective upon our receipt of your request or at a later date specified by you. If you cancel this policy, we will refund any unearned premium on a pro-rata basis. Cancellation will be without prejudice to any claim originating prior to the effective date of cancellation.

**EXHIBIT 1**                                                                                      35

## COMPREHENSIVE LONG TERM CARE POLICY

This policy provides benefits for Qualified Long Term Care Services as defined herein, subject to all terms and provisions.

**LINCOLN BENEFIT LIFE COMPANY**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

## LINCOLN BENEFIT LIFE
COMPANY

*A Member of Allstate Financial Group*

LB-6302-P-2-CA(Q)                                                    09

EXHIBIT 1                                    36

**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

# COMPOUND BENEFIT INCREASE RIDER

This rider is made part of the policy to which it is attached and is applicable only when shown on the Policy Schedule. It is subject to all provisions, definitions, conditions, exceptions, and limitations of the policy which do not conflict with this rider. If any conflicts occur, the provisions of this rider will apply. In this rider, Lincoln Benefit Life Company will be referred to as "we", "us", or "our". The insured(s) named in the Policy Schedule will be referred to as "you" or "your".

We promise to pay the Compound Benefit Increase as described below. We make this promise in consideration of: (1) the statements made in your signed application; and (2) payment of the premium for this rider. This rider takes effect on the date shown in the Policy Schedule and continues in force until the policy to which it is attached terminates.

## COMPOUND BENEFIT INCREASE

On each policy anniversary, we will increase the Daily Benefit amounts shown in the Policy Schedule, as well as the remaining Total Maximum Amount Payable, by 5%, compounded annually. Benefits will continue to increase annually while you are receiving benefits.

## YOUR 30 DAY RIGHT TO EXAMINE YOUR RIDER

If you are not satisfied with your rider, you may return it to us or our agent within 30 days after you receive it. We will then refund any premium you have paid within 30 days of our receipt of the rider and the rider will be considered to be void from its beginning.

**Read this rider carefully. It is a part of a legal contract between you and us.**

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.

Michael J. Velotta
Secretary

Gene Wraith
President

LB-6301-R4-2-CA

02

EXHIBIT 1                    37

**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

# JOINT COVERAGE ENDORSEMENT

This endorsement is attached to and made a part of your policy as of its Effective Date.

## JOINT COVERAGE

With this endorsement, the attached policy provides equal coverage for each insured listed in the Policy Schedule. All benefit amounts and maximums as described in the policy are available to each of you separately. Each of you must separately qualify for benefits as described in the policy.

## WAIVER OF PREMIUM

The Waiver of Premium Benefit is modified as follows:

We will waive premiums as described in the Waiver of Premium Benefit section, when either one or both of you are confined, as described in the Waiver of Premium Benefit section, for a period of 60 calendar days.

## CONTINUATION AND CONVERSION OF JOINT COVERAGE

If one of you dies, upon receipt of proof of death, coverage continues for the surviving insured at the premium rate that would have been charged for an individual policy at the original issue age and risk class of the surviving insured. However, the premium will be based on the premium rate table in effect at the time of the death of the joint insured. Any unearned portion of the difference between the original joint premium and the new premium will be refunded on a pro-rata basis. The new premium for the continued coverage will be due on the policy's next premium due date.

If you divorce or legally separate and request termination of joint coverage, upon receipt of proof of divorce or legal separation, we will convert the joint policy to separate individual policies with the same coverage, effective on the next premium due date, terminating your joint coverage on that date. Your converted coverage will be at the same premium rate that would have been charged for an individual policy at your original issue age and risk class. However, the premium will be based on the premium rate table in effect on the date the conversion is effective.

Each of you will have 30 days to examine your converted policy, otherwise it may be returned to us or our agent within 30 days after it is received. We will then refund any premium paid for the converted coverage and the policy will be considered void from the reissue date.

Other than divorce or legal separation, there is no right of conversion to an individual policy. Coverage may be continued by timely payment of the joint premium rate, even if one of you no longer wants to be covered. In the event of the death of one of the insureds, continued individual coverage will be offered as described above.

LB-E-204-CA                                                                                           01     Page 1

EXHIBIT 1                                          38

POLICY TERMINATION

The POLICY TERMINATION provision in the policy is deleted in its entirety and is replaced by the following:

This policy will terminate and your coverage will end on the earliest of the following events to occur:

1. We have paid benefits for the number of days shown in the Policy Schedule under Maximum Total Lifetime Benefit to each Insured under this policy;

2. Your policy lapses due to nonpayment of premium;

3. The effective date of cancellation of this policy when cancellation is requested by you as described under PART 7F., REFUND OF UNEARNED PREMIUM; or

4. The date of death of the last of you to die.

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.

Michael J. Velotta
Secretary

Gene Wraith
President

LB-E-204-CA

01   Page 2

EXHIBIT 1                    39

**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243

**APPLICATION FOR NURSING FACILITY AND RESIDENTIAL CARE FACILITY ONLY OR COMPREHENSIVE LONG TERM CARE POLICY**
LB-6301-A.2-CA (PLEASE PRINT)

☑ This contract for long term care insurance is intended to be a federally qualified long term care insurance contract and may qualify you for federal and state tax benefits.

☐ This contract for long term care insurance is not intended to be a federally qualified long term care insurance contract.

THIS POLICY IS AN APPROVED LONG TERM CARE INSURANCE POLICY UNDER STATE INSURANCE REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

**Applicant Information**

| Applicant (First Name, Middle Initial, Last Name) | Sex | Birthplace (City, State) |
|---|---|---|
| Alexander J. Dallal | ☑ M  ☐ F | Egypt |

| Social Security Number | Height | Weight | Birthdate | Age as of Nearest Birthday |
|---|---|---|---|---|
| 4161 | 5 8 | 190 | 41 | 62 |

| Residence Address (Street, City, State, Zip) | Phone |
|---|---|
| L. A. CA 90034 | Day: (310) 556 5657 |
| | Eve.: (310) 836 7336 |
| Billing Address – If different (Name, Street, City, State, Zip) | Best time to reach: ☑ Day  ☐ Evening |

**Health Questions**

1. During the past 24 months, have you:

a. needed assistance or supervision for any of the following everyday activities?

| Yes | No | | Yes | No | | Yes | No | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☑ | dressing | ☐ | ☑ | eating | ☐ | ☑ | bathing |
| ☐ | ☑ | continence | ☐ | ☑ | transferring | ☐ | ☑ | walking |
| ☐ | ☑ | toileting | | | | | | |

b. used any of the following items or devices?

| Yes | No | | Yes | No | | Yes | No | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☑ | wheelchair | ☐ | ☑ | walker | ☐ | ☑ | oxygen equipment |
| ☐ | ☑ | cane | ☐ | ☑ | braces | ☐ | ☑ | catheter |

c. received any of the following services?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | kidney dialysis | ☐ | ☑ | physical therapy |
| ☐ | ☑ | home health services | ☐ | ☑ | speech therapy |
| ☐ | ☑ | homemaker services | ☐ | ☑ | rehabilitation therapy |

d. experienced any of the following symptoms?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | memory loss | ☐ | ☑ | fainting |
| ☐ | ☑ | falling | ☐ | ☑ | unstable gait |

e. been confined to the following facilities?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | hospital | ☐ | ☑ | nursing facility |
| ☐ | ☑ | residential care facility | ☐ | ☑ | home for the aged |

f. received disability benefits?  ☐ Yes  ☑ No

2. Are you currently confined to a bed?  ☐ Yes  ☑ No

3. During the last 10 years, have you been medically diagnosed with or treated for:

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | a) AIDS | ☐ | ☑ | g) Myasthenia Gravis |
| ☐ | ☑ | b) Alzheimer's Disease | ☐ | ☑ | h) Organic Brain Syndrome |
| ☐ | ☑ | c) Dementia | ☐ | ☑ | i) Parkinson's Disease |
| ☐ | ☑ | d) Amyotrophic Lateral Sclerosis | ☐ | ☑ | j) Parkinsonism |
| ☐ | ☑ | e) Multiple Sclerosis | ☐ | ☑ | k) Lupus Erythematosis |
| ☐ | ☑ | f) Muscular Dystrophy | ☐ | ☑ | l) Scleroderma |

EXHIBIT 1

40

**4. During the past 10 years, have you been medically advised or treated for:**

| Yes | No | | | Yes | No | | |
|---|---|---|---|---|---|---|---|
| ☐ | ☑ | a) | abnormal blood pressure | ☐ | ☑ | m) | amnesia |
| ☐ | ☑ | b) | heart attack | ☐ | ☑ | n) | paralysis |
| ☐ | ☑ | c) | atrial fibrillation | ☐ | ☑ | o) | cirrhosis of the liver |
| ☐ | ☑ | d) | coronary artery disease | ☐ | ☑ | p) | alcohol dependency or abuse |
| ☐ | ☑ | e) | peripheral vascular disease | ☐ | ☑ | q) | drug dependency or abuse |
| ☐ | ☑ | f) | diabetes | ☐ | ☑ | r) | arthritis |
| ☐ | ☑ | g) | asthma | ☐ | ☑ | s) | osteoporosis |
| ☐ | ☑ | h) | emphysema | ☐ | ☑ | t) | depression |
| ☐ | ☑ | i) | cancer; internal | ☐ | ☑ | u) | seizures |
| ☐ | ☑ | j) | cancer; melanoma | ☐ | ☑ | v) | renal failure |
| ☐ | ☑ | k) | stroke | ☐ | ☑ | w) | glaucoma |
| ☐ | ☑ | l) | TIA (transient ischemic attack) | ☐ | ☑ | x) | macular degeneration |

**5. Have you consulted with any medical specialist(s) in the last 2 years?**
If "Yes", please provide the name and specialty of the M.D. and the condition for which you were treated.

NO

**6. During the past 12 months have you (be sure to complete each question and provide details as noted):**

| Yes | No | | |
|---|---|---|---|
| ☐ | ☑ | a) | been advised to have any surgery that has not yet been performed? |
| ☐ | ☑ | b) | smoked cigarettes? |
| ☐ | ☑ | c) | been declined by another company for a policy providing nursing home or home health care coverage? |
| ☐ | ☑ | d) | consulted a physician for any other reason not previously noted in this application? |
| ☑ | ☐ | e) | consulted a physician for a checkup? |
| ☐ | ☑ | f) | during the past 12 months have you taken prescription medication? |

If you answered "Yes" to any of Questions 1-6, provide full details below.

| Ques. No. | List any Medication Prescribed | Name, Address and Telephone Number of Doctor |
|---|---|---|
| 6 E | NONE   ✓ – up 4/03 | DR. DUDLEY DANOFF 8631 W. 3rd St. #915E L.A. CA 90048 (310) 854-9898 |
| | | |
| | | |
| | | |
| | | |

| Yes | No | | |
|---|---|---|---|
| ☐ | ☑ | 1. | Are you covered by Medicaid? (This does not mean Medicare) |
| ☐ | ☑ | 2. | Do you have a policy, certificate or application with this or any other company providing long term care insurance? |
| ☐ | ☑ | 3. | Did you have another long term care insurance policy or certificate in force during the last twelve (12) months (including a health care service contract or health maintenance organization contract)? If that policy lapsed, when did it lapse? _____ |
| ☐ | ☑ | 4. | Do you intend to replace any of your medical or health insurance coverage (other than CalPERS (California Public Employees Retirement System) coverage) with this policy? |

If you answered "Yes" to any of Questions 2-4, provide full details below and complete required replacement forms:

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

LB-6301-A.2-CA

05   Page 2

**EXHIBIT 1**

41

**Additional Information**

Yes No
- ☐ ☑ 1. Is any person or institution authorized to act on your behalf due to any mental or physical disability that you now have or have had in the past?
- ☐ ☑ 2. Do you have a Power of Attorney agreement in existence?
- 3. With whom do you currently live? ☑ Spouse ☐ Family ☐ Alone ☐ Other: _____
- 4. Type of residence? ☑ House or Condo ☐ Apartment ☐ Retirement Community ☐ Other
- ☑ ☐ 5. Are you actively at work? If "Yes," hours per week: **40-50 HRS**
- 6. Occupation: **Retail Store Owner**   If retired, date of retirement: _____

---

**Coverage Applied For**

**I am applying for a:**
- ☑ Qualified Policy   ☐ Non-Qualified Policy

**Coverage Type:**
- ☐ Nursing Facility and Residential Care Facility Only Policy
- ☑ Comprehensive Long Term Care Policy

**Elimination Period:**
- ☐ 0 Days   ☑ 30 Days   ☐ 90 Days

**Daily Benefit Amount Applied For:**
Nursing Facility and Residential Care Facility Benefit
($50 - $250): $ **150**
Home Care (minimum daily benefit $50):
- ☐ 50% of Daily Benefit
- ☑ 100% of Daily Benefit

**Benefit Period:**
- ☑ Lifetime   ☐ 1,825 Days   ☐ 1,095 Days

**Optional Coverage:**
Benefit Increase Rider
- ☑ Compound Benefit Increase Rider.
Nonforfeiture Benefit Riders (select only one)
- ☐ Full Nonforfeiture
- ☐ Limited Nonforfeiture
- ☐ Shortened Benefit Period
- ☐ Paid-Up Survivor Benefit Rider (available with Joint Coverage only)

---

**Premium Information**

**Primary Insured Rate Class:**
- ☑ Pref. NS   ☐ Pref.   ☐ Std.

**Secondary Insured Rate Class:**
(Complete Supplemental Application)
- ☑ Pref. NS   ☐ Pref.   ☐ Std.

**Premium Payment Options:**
- ☐ 10-Year Premium
- ☐ Single Premium
  - ☐ With Nonforfeiture Benefit
  - ☐ Without Nonforfeiture Benefit

**Payment Mode:** (select only one)
- ☐ Annual
- ☐ Semi-Annual
- ☐ Quarterly
- ☑ PAC/EFT
- ☐ Single
- ☐ List Billing

**Endorsed Group?**
☑ Yes   ☐ No   If "Yes," Group Identification Code or Name: _____

| Annual (or Single) Premium $ **3249** | Modal Premium $ | Paid with Application $ **290** |
|---|---|---|
| Beneficiary Name and Relationship | | Special Request / Requested Effective Date |

05   Page 3

LB-6301-A.2-CA

**EXHIBIT 1**

42

**AGREEMENT** — The answers given are complete and true to the best of my knowledge and belief. I understand that the Company will rely on my written answers to the questions in this application and that if my answers are not complete and true, my policy may not be valid. I also understand that the agent cannot determine eligibility for or alter the terms of the proposed policy.

**AUTHORIZATION** — I hereby authorize the Medical Information Bureau, any licensed physician, medical practitioner, hospital, clinic, medical facility or insurance company that has any records or knowledge of me or my health, relative to my insurability, to give to Lincoln Benefit Life Company, its reinsurers or any third party administrator designated by Lincoln Benefit Life Company any such information. I understand that such information will be used to determine my eligibility for insurance. A photocopy of this authorization shall be as valid as the original. This authorization will be valid for 26 months from the date signed and I understand that I or my authorized representative may receive a photocopy of it.

**CAUTION: If your answers on this application are misstated or untrue, Lincoln Benefit Life Company may have the right to deny benefits or rescind your policy.**

Signed at _L. A., CA_        _Alexander J. Dalla_        _6/12/08_
       City, State               Applicant's Signature          Date

**BENEFIT INCREASE RIDER** — I have reviewed the Outline of Coverage and the graph that compares the benefits and premiums of this policy with and without the Benefit Increase Rider and I have chosen to ☒ accept ☐ reject coverage under the 5% annual Compound Benefit Increase Rider.

_Alexander J. Dalla_  _6/12/08_
Applicant's Signature       Date

**NONFORFEITURE RIDERS** — I have reviewed the Outline of Coverage and the nonforfeiture benefits as described therein. Specifically, I have reviewed the Shortened Benefit Period and Full and Limited Nonforfeiture Riders and I have chosen to ☐ accept ☒ reject coverage under the nonforfeiture riders.

**ACKNOWLEDGMENT** — I acknowledge receipt/delivery of:

☒ The "Important Notice" regarding policies available
☒ Outline of Coverage (including HICAP notice)
☒ Taking Care of Tomorrow
☒ The Long Term Care Insurance Personal Worksheet

☒ Disclosure Statement (which includes the Medical Information Bureau Notice and Notice of Insurance Information Practices)
☐ (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

_Alexander J. Dalla_        _(signature)_        _6/12/08_
Applicant's Signature         Licensed Agent's Signature       Date

| Yes | No | |
|---|---|---|
| ☐ | ☒ | 1. To the best of your knowledge, is the insurance applied for intended to replace any medical or health insurance in force with this or any other company? |

    2. List any other health insurance policies that you have sold to the applicant(s):

      (a) Which of the policies listed above are still in force, if any?

      (b) Which of the policies listed above sold in the past five (5) years are no longer in force, if any?

☒ ☐  3. Did you ask the applicant(s) all the questions face to face and witness their signature(s)?
      If "No," provide details:

I certify that the applicant's(s') answers to the questions were fully and accurately recorded in the application, that the questions in the Agent's Statement have been answered accurately and that the Outline of Coverage, the Disclosure Statement and the Buyer's Guide have been given to the applicant(s). I have reviewed the current health insurance coverage of the applicant(s) and find that the coverage of the type and amount applied for is appropriate for the applicant's(s') needs. Further, if this is a replacement, I have reviewed the applicant's(s') current health insurance coverage and find that this replacement is appropriate for the applicant's(s') needs.

_Leonard Roberts_  _039MS_  _100%_  _(signature)_  _6/12/08_
Licensed Agent's Name (please print)   Ident. Code   Split%   Licensed Agent's Signature   Date

_310-1089-3354_        _310-1089-3399_
   Agent Phone           Agent Fax           Agency Number

Second Agent's Name (please print)    Ident. Code    Split %

LB-6301-A.2-CA                             05   Page 4

**EXHIBIT 1**



**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243

**SUPPLEMENTAL APPLICATION**
**FOR JOINT COVERAGE**
LB-6301-AS.1-CA (PLEASE PRINT)

☑ This contract for long term care insurance is intended to be a federally qualified long term care insurance contract and may qualify you for federal and state tax benefits.

☐ This contract for long term care insurance is _not_ intended to be a federally qualified long term care insurance contract.

THIS POLICY IS AN APPROVED LONG TERM CARE INSURANCE POLICY UNDER STATE INSURANCE REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

**Applicant Information**

| Applicant (First Name, Middle Initial, Last Name) | Sex | Birthplace (City, State) |
|---|---|---|
| Claire A. Dallal | ☐ M ☑ F | Greece |

| Social Security Number | Height | Weight | Birthdate | Age as of Nearest Birthday |
|---|---|---|---|---|
| ████8651 | 5'7" | 198 | ████ 53 | ~~49~~ 50 |

| Name of Primary Applicant | Relationship |
|---|---|
| Alexander Dallal | Husband |

**Health Questions**

**1. During the past 24 months, have you:**

a. needed assistance or supervision for any of the following everyday activities?

| Yes | No | | Yes | No | | Yes | No | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☑ | dressing | ☐ | ☑ | eating | ☐ | ☑ | bathing |
| ☐ | ☑ | continence | ☐ | ☑ | transferring | ☐ | ☑ | walking |
| ☐ | ☑ | toileting | | | | | | |

b. used any of the following items or devices?

| Yes | No | | Yes | No | | Yes | No | |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☑ | wheelchair | ☐ | ☑ | walker | ☐ | ☑ | oxygen equipment |
| ☐ | ☑ | cane | ☐ | ☑ | braces | ☐ | ☑ | catheter |

c. received any of the following services?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | kidney dialysis | ☐ | ☑ | physical therapy |
| ☐ | ☑ | home health services | ☐ | ☑ | speech therapy |
| ☐ | ☑ | homemaker services | ☐ | ☑ | rehabilitation therapy |

d. experienced any of the following symptoms?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | memory loss | ☐ | ☑ | fainting |
| ☐ | ☑ | falling | ☐ | ☑ | unstable gait |

e. been confined to the following facilities?

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | hospital | ☐ | ☑ | nursing facility |
| ☐ | ☑ | residential care facility | ☐ | ☑ | home for the aged |

f. received disability benefits?   ☐ Yes   ☑ No

**2. Are you currently confined to a bed?**   ☐ Yes   ☑ No

**3. During the last 10 years, have you been medically diagnosed with or treated for:**

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | a) AIDS | ☐ | ☑ | g) Myasthenia Gravis |
| ☐ | ☑ | b) Alzheimer's Disease | ☐ | ☑ | h) Organic Brain Syndrome |
| ☐ | ☑ | c) Dementia | ☐ | ☑ | i) Parkinson's Disease |
| ☐ | ☑ | d) Amyotrophic Lateral Sclerosis | ☐ | ☑ | j) Parkinsonism |
| ☐ | ☑ | e) Multiple Sclerosis | ☐ | ☑ | k) Lupus Erythematosis |
| ☐ | ☑ | f) Muscular Dystrophy | ☐ | ☑ | l) Scleroderma |

EXHIBIT 1

44

**Health Questions (Continued)**

4. During the past 10 years, have you been medically advised or treated for:

| Yes | No | | | Yes | No | | |
|---|---|---|---|---|---|---|---|
| ☐ | ☑ | a) | abnormal blood pressure | ☐ | ☑ | m) | amnesia |
| ☐ | ☑ | b) | heart attack | ☐ | ☑ | n) | paralysis |
| ☐ | ☑ | c) | atrial fibrillation | ☐ | ☑ | o) | cirrhosis of the liver |
| ☐ | ☑ | d) | coronary artery disease | ☐ | ☑ | p) | alcohol dependency or abuse |
| ☐ | ☑ | e) | peripheral vascular disease | ☐ | ☑ | q) | drug dependency or abuse |
| ☐ | ☑ | f) | diabetes | ☐ | ☑ | r) | arthritis |
| ☐ | ☑ | g) | asthma | ☐ | ☑ | s) | osteoporosis |
| ☐ | ☑ | h) | emphysema | ☐ | ☑ | t) | depression |
| ☐ | ☑ | i) | cancer; internal | ☐ | ☑ | u) | seizures |
| ☐ | ☑ | j) | cancer; melanoma | ☐ | ☑ | v) | renal failure |
| ☐ | ☑ | k) | stroke | ☐ | ☑ | w) | glaucoma |
| ☐ | ☑ | l) | TIA (transient ischemic attack) | ☐ | ☑ | x) | macular degeneration |

5. Have you consulted with any medical specialist(s) in the last 2 years?

If "Yes", please provide the name and specialty of the M.D. and the condition for which you were treated. NONE

6. During the past 12 months have you (be sure to complete each question and provide details as noted):

| Yes | No | | |
|---|---|---|---|
| ☐ | ☑ | a) | been advised to have any surgery that has not yet been performed? |
| ☐ | ☑ | b) | smoked cigarettes? |
| ☐ | ☑ | c) | been declined by another company for a policy providing nursing home or home health care coverage? |
| ☐ | ☑ | d) | consulted a physician for any other reason not previously noted in this application? |
| ☐ | ☑ | e) | consulted a physician for a checkup? |
| ☑ | ☐ | f) | during the past 12 months have you taken prescription medication? |

If you answered "Yes" to any of Questions 1-6, provide full details below.

| Ques. No. | List any Medication Prescribed | Name, Address and Telephone Number of Doctor |
|---|---|---|
| 6 E | NoNE · V-up | Dr. Ashly Lipshutz 11587 Splitrock Court Gold River, CA 95670 (Retired) |
| | | |
| | | |
| | | |

**Information About Your Insurance Coverage**

| Yes | No | | |
|---|---|---|---|
| ☐ | ☑ | 1. | Are you covered by Medicaid? (This does not mean Medicare) |
| ☐ | ☑ | 2. | Do you have a policy, certificate or application with this or any other company providing long term care insurance? |
| ☐ | ☑ | 3. | Did you have another long term care insurance policy or certificate in force during the last twelve (12) months (including a health care service contract or health maintenance organization contract)? |
| | | | If that policy lapsed, when did it lapse? _____ |
| ☐ | ☑ | 4. | Do you intend to replace any of your medical or health insurance coverage (other than CalPERS (California Public Employees Retirement System) coverage) with this policy? |

If you answered "Yes" to any of Questions 2-4, provide full details below and complete required replacement forms:

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

EXHIBIT 1

45

**Additional Information**

| Yes | No | | |
|---|---|---|---|
| | ☑ | 1. | Is any person or institution authorized to act on your behalf due to any mental or physical disability that you now have or have had in the past? |
| | ☑ | 2. | Do you have a Power of Attorney agreement in existence? |
| | | 3. | With whom do you currently live? ☑ Spouse ☐ Family ☐ Alone ☐ Other: _____ |
| | | 4. | Type of residence? ☑ House or Condo ☐ Apartment ☐ Retirement Community ☐ Other |
| ☑ | | 5. | Are you actively at work? If "Yes," hours per week: 40-50 HRS |
| | | 6. | Occupation: Retail Store Owner   If retired, date of retirement: _____ |
| | ☑ | 7. | Endorsed Group? If "Yes," Group Identification Code or Name: _____ |

**Applicant's Statements**

**AGREEMENT** — The answers given are complete and true to the best of my knowledge and belief. I understand that the Company will rely on my written answers to the questions in this application and that if my answers are not complete and true, my policy may not be valid. I also understand that the agent cannot determine eligibility for or alter the terms of the proposed policy.

**AUTHORIZATION** — I hereby authorize the Medical Information Bureau, any licensed physician, medical practitioner, hospital, clinic, medical facility or insurance company that has any records or knowledge of me or my health, relative to my insurability, to give to Lincoln Benefit Life Company, its reinsurers or any third party administrator designated by Lincoln Benefit Life Company any such information. I understand that such information will be used to determine my eligibility for insurance. A photocopy of this authorization shall be as valid as the original. This authorization will be valid for 26 months from the date signed and I understand that I or my authorized representative may receive a photocopy of it.

**CAUTION: If your answers on this application are misstated or untrue, Lincoln Benefit Life Company may have the right to deny benefits or rescind your policy.**

Signed at __L.A.__, __CA__          _Claire A. Dallal_          6/12/3
City, State                              Applicant's Signature          Date

**BENEFIT INCREASE RIDER** — I have reviewed the Outline of Coverage and the graph that compares the benefits and premiums of this policy with and without the Benefit Increase Rider and I have chosen to ☑ accept ☐ reject coverage under the 5% annual Compound Benefit Increase Rider.

_Claire A. Dallal_          6/12/3
Applicant's Signature          Date

**NONFORFEITURE RIDERS** — I have reviewed the Outline of Coverage and the nonforfeiture benefits as described therein. Specifically, I have reviewed the Shortened Benefit Period and Full and Limited Nonforfeiture Riders and I have chosen to ☐ accept ☑ reject coverage under the nonforfeiture riders.

**Applicant's Checklist**

**ACKNOWLEDGMENT** – I acknowledge receipt/delivery of:
☑ The "Important Notice" regarding policies available
☑ Outline of Coverage (including HICAP notice)
☑ Taking Care of Tomorrow
☑ The Long Term Care Insurance Personal Worksheet

☐ Disclosure Statement (which includes the Medical Information Bureau Notice and Notice of Insurance Information Practices)

☐ (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

_Claire A. Dallal_          _[signature]_          6/12/03
Applicant's Signature          Licensed Agent's Signature          Date

LB-6301-AS.1-CA                                        05      Page 3

EXHIBIT 1                                             46