UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 16-09307-MWF (Ex)  Date: April 11, 2017
Title: Lincoln Benefit Life Co. -v- Alex Dallal, et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER DENYING MOTION TO DISMISS [20]

Before the Court is Defendants Alex Dallal and Claire Dallal's Motion to Dismiss (the "Motion"), filed February 27, 2017. (Docket No. 21). Plaintiff Lincoln Benefit Life Company ("Lincoln Benefit") filed its Opposition on March 20, 2017. (Docket No. 26). Defendants replied on March 27, 2017. (Docket No. 27). The Court has read and considered the papers filed on the Motion and held a hearing on **April 10, 2017**.

For the reasons set forth below, the Motion is **DENIED**. All of Lincoln Benefit's claims are pled with sufficient specificity to survive the heightened pleading requirements of Rule 9(b). As a matter of law, the terms of the Policy do not prevent Lincoln Benefit from seeking to void the contract as to either Mr. or Mrs. Dallal.

## I. BACKGROUND

The Complaint alleges the following facts, which the Court takes as true and construes in the light most favorable to the plaintiff. *See, e.g., Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

---
**CIVIL MINUTES—GENERAL**  1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 16-09307-MWF (Ex) | Date: April 11, 2017 |
| Title: Lincoln Benefit Life Co. -v- Alex Dallal, et al. | |

Lincoln Benefit, a Nebraska corporation, is an insurance company that is licensed and operates in California. (Complaint ¶ 1 (Docket No. 1)). On August 20, 2003, Lincoln Benefit issued a joint Comprehensive Long Term Care Policy (the "Policy," (Docket No. 1, Ex. 1)) to Defendants, a married couple, as co-insureds. (*Id.* ¶ 9).

### A. The Policy

The Policy provides "Qualified Long Term Care Services" to qualifying insureds. (Compl. ¶ 10). Qualified Long Term Care Services include necessary diagnostic, preventive, therapeutic, curing, and treating services, as well as "Maintenance or Personal Care Services," defined as any care, the primary purpose of which is the provision of needed assistance with any disability that has caused an individual to become chronically ill (as further defined in the Policy). (*Id.*; Policy at 4). The Policy allows an insured to receive benefits in a nursing facility, residential care facility, or at home.

A "Chronically Ill Individual" is defined as:

[A]ny individual who has been certified within the previous 12 months by a Licensed Health Care Practitioner as:

  a. Being unable to perform, without substantial assistance from another individual, at least two activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; *or*
  b. Requiring substantial supervision to protect such individual from threats to health and safety due to severe Cognitive Impairment.

(Policy at 6) (emphasis added). Activities of daily living are defined to include eating, bathing, the ability to maintain control of bowel and bladder function, the ability to perform personal hygiene, dressing, and the ability to move into or out of bed, a chair, or a wheelchair. (Policy at 5). A person has suffered a loss of functional capacity when he or she requires the substantial assistance of another person to perform the

---

**CIVIL MINUTES—GENERAL**  2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-09307-MWF (Ex)        **Date:** April 11, 2017
**Title:**     Lincoln Benefit Life Co. -v- Alex Dallal, et al.

above-described activities of daily living. (Policy at 4). Only a Chronically Ill Individual can collect benefits under the Policy. (Compl. ¶ 12; Policy at 5). The insured also must be actually receiving home care to qualify for benefits. (*Id.*). Home care services provided by a member of the insured's immediate family do not qualify for reimbursement. (Policy at 9).

      To qualify for home care under the first prong of the chronically ill requirement, the insured must receive "substantial assistance" for at least two activities of daily living; the substantial assistance must be either "hands-on assistance," which means the insured requires the physical assistance of another person without whom the insured would be unable to perform at least two of the activities of daily living, or "standby assistance," which means the insured requires the presence of another person within arms' reach to prevent injury while performing at least two of the activities of daily living. (Policy at 4).

      To qualify for home care under the second prong of the chronically ill requirement, the insured must be cognitively impaired. Cognitive impairment is defined to mean "the deterioration or loss of . . . intellectual capacity which requires substantial supervision by another person to protect [the impaired individual] or others." (Policy at 5). Cognitive impairment "is measured by clinical evidence and standardized tests which reliably measure . . . impairment in (a) short or long term memory; (b) orientation as to people, places[,] or time; and deductive or abstract reasoning." (*Id.*). Substantial supervision means "continual supervision by another person is necessary to protect [the] insured from threats to his or her health or safety." (*Id.*).

      The insured must submit notice of a claim, written proof of loss, and, if the claim is granted, ongoing claim forms to collect under the Policy. (Compl. ¶ 21). Provided that the above terms and conditions are met, Lincoln Benefit will pay the insured's actual daily expenses up to a set maximum limit. (*Id.* ¶ 22).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-09307-MWF (Ex)					Date:  April 11, 2017
Title:	Lincoln Benefit Life Co. -v- Alex Dallal, et al.

### B.	The Claim

On April 5, 2004, Mr. Dallal sent Lincoln Benefit notice that he would be submitting a claim under the Policy.  (Compl. ¶ 23).  The notice indicated that Mr. Dallal had recently undergone surgery to remove a benign meningioma (a brain tumor) and would be receiving home health care from caregiver Helen Genovea.  (*Id.*).  At the same time, Mrs. Dallal submitted a power of attorney, indicating that she would act on Mr. Dallal's behalf.  (*Id.*).  On April 29, 2004, Lincoln Benefit found Mr. Dallal eligible for benefits, and sent Defendants a joint check.  (*Id.*).

As part of the ongoing proof of loss requirement, Mrs. Dallal received claim forms and a fraud notice from Lincoln Benefit.  (*Id.* ¶ 24).  Ms. Genovea also received and signed a fraud notice.  The notice stated, "Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit . . . is guilty of a crime and may be subject to fines and confinement in prison."  (*Id.* ¶ 26).  Lincoln benefit required regular submission of claim forms, including caregiver activity notes, to continue qualifying for benefits under the Policy.  (*Id.* ¶ 24).

From April 2004 through December 5, 2016, Lincoln Benefit received ongoing caregiver notes from Defendants.  (*Id.*).  The notes stated that Mr. Dallal's caregiver, Ms. Genovea, continued to assist Mr. Dallal with bathing, other personal hygiene, dressing, laundry, taking medications, getting around in the home, preparing meals, and getting into and out of bed, wheelchairs, etc.  (*Id.*).  The notes indicated that Mr. Dallal's care needs increased over time.  (*Id.* ¶ 25).  By December 2016, Ms. Genovea was reportedly providing 12 hours of care per day, 7 days per week, at $265 per day.  (*Id.*).  In total, Lincoln Benefit paid the Dallals $761,225.89 in long-term care benefits.  (*Id.* ¶ 27).

### C.	Discovery of the Alleged Scheme to Defraud

In May 2016, Dr. Joy Feld submitted an "Attending Physician's Statement" (the "Feld Statement") regarding Mr. Dallal's medical and cognitive status.  (Compl. ¶ 28).  Dr. Feld reported that Mr. Dallal required stand-by assistance with getting out of bed,

___

**CIVIL MINUTES—GENERAL**					4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-09307-MWF (Ex)          **Date:** April 11, 2017
**Title:**     Lincoln Benefit Life Co. *-v-* Alex Dallal, et al.

using the toilet, bathing, and dressing, and had cognitive impairment. (*Id.*). Dr. Feld reported that Mr. Dallal was independent in moving around, continence, and eating. (*Id.*). Dr. Feld indicated that Mr. Dallal still required permanent supervision by a caregiver. (*Id.*).

After evaluating the Feld Statement, Lincoln Benefit became suspicious; although the Feld Statement indicated that Mr. Dallal required less assistance than Dr. Feld's Attending Physician's Statement from 2015, the monthly caregiver notes that Defendants had sent Lincoln Benefit for the same period reflected that Mr. Dallal needed much more care. (*Id.* ¶¶ 29–30). For example, in contrast to the Feld Report's assessment, the caregiver notes indicated that Mr. Dallal required hands-on assistance with getting out of bed, using the toilet, moving around, bathing, dressing, eating, and other services. (*Id.* ¶ 30).

Accordingly, Lincoln Benefit began to investigate the claims. First, Lincoln Benefit scheduled a home assessment by a nurse representative. (*Id.* ¶ 31). On June 23, 2016, the nurse visited the Dallal home. (*Id.*). Mrs. Dallal told the nurse that Ms. Genovea had the day off. (*Id.*). Mr. Dallal himself appeared to be extremely lethargic. (*Id.*). He could hardly open his eyes and could not answer the nurse's questions. (*Id.*). Instead, Mrs. Dallal explained to the nurse representative the level of care her husband required: hands-on assistance with bathing, getting dressed, getting on and off the toilet, moving in or out of a chair or bed, moving around outside the home; standby assistance with moving around inside the home; assistance from a cane, walker, or wheelchair for getting around; and assistance with other daily activities, like using the telephone, going grocery shopping, and preparing meals. (*Id.*). Based on this conversation, the nurse representative recommended to Lincoln Benefit that home care services were appropriate for Mr. Dallal at the level currently provided, that is 12 hours per day, 7 days per week. (*Id.* ¶ 32).

Lincoln Benefit continued to be concerned that the investigation of the nurse representative was at odds with the level of care recommended in the Feld Report. (*Id.* ¶ 33). Therefore, in July 2016, Lincoln Benefit arranged to surveil the Dallal home over a period of several months. (*Id.*). Specifically, Lincoln Benefit arranged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-09307-MWF (Ex)**                              **Date:  April 11, 2017**
**Title:**    Lincoln Benefit Life Co. -*v*- Alex Dallal, et al.

surveillance for July 25 through July 31, 2016; September 10 through September 16, 2016; and November 2 through November 5, 2016.  (*Id.*).

The surveillance revealed a very different picture from the one painted by the caregiver notes and Mrs. Dallal's conversation with the nurse representative.  Rather, Lincoln Benefit determined, based on its surveillance, that Mr. Dallal was apparently active, independent and productive, and received no home care and no assistance during the surveillance period.  (*Id.* ¶ 34).  No caregiver was ever observed at the Dallal residence or spending any time with Mr. Dallal.  (*Id.*).  "Rather, Mr. Dallal was regularly observed during the surveillance, among other things:

- Working inside his clothing business on consecutive days during business hours;
- Independently engaging in activities outside his shop, such as sweeping the walk in front of his store; interacting with customers and others; carrying trash bags and a cardboard box; walking to a dumpster to dispose of trash; independently locking up his store, and carrying bags from his store at the end of the work day;
- Walking and standing independently, without difficulty or any assistance from a cane, walker, or wheelchair;
- Moving about outdoors and visiting places on his own and without assistance;
- Crossing the street on his own and without any assistance;
- Transferring in and out of vehicles on his own and without any assistance;
- Transferring to and from a sitting position on his own and without any assistance;
- Re-arranging and wiping down outdoor furniture by himself early one morning outside of a local eatery;
- Walking up and down stairs independently;
- Using a cell phone kept in a case on his belt at will and without any assistance;
- Using keys kept on a chain on his belt;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-09307-MWF (Ex)            **Date:** April 11, 2017
**Title:** Lincoln Benefit Life Co. -v- Alex Dallal, et al.

- Going to local eateries, both on his own and with family members;
- Carrying bags and grocery items into his home, unassisted by family members;
- Being alone, without supervision; and
- Appearing well-groomed, alert, and interactive."

(Compl. ¶ 34). Mrs. Dallal was observed regularly with her husband, including while driving him to or from his tailoring business, working in the business, running errands, and eating with him in restaurants. (*Id.* ¶ 35). But apart from his time with his wife, Mr. Dallal was also regularly observed on his own, including while out or while working at his business. (*Id.*).

     The Dallals continued to submit caregiver notes during the surveillance period. (*Id.* ¶ 36). Those notes directly contradicted what Lincoln Benefit's representative observed during surveillance. The notes indicated that Mr. Dallal received daily home care services from Ms. Genovea from 8:00 a.m. to 8:00 p.m. each day, despite the fact that Mr. Dallal had been seen out and about without Ms. Genovea, or the assistance of any other caregiver. (*Id.*). The notes purported to be signed by Ms. Genovea and Mrs. Dallal, on behalf of Mr. Dallal, and included the fraud notice. (*Id.*). The concurrently submitted receipts indicated that Mrs. Dallal paid Ms. Genovea in cash for her services during this period. (*Id.*).

     On November 5, 2016, Lincoln Benefit proceeded to interview Ms. Genovea. (*Id.* ¶ 38). Ms. Genovea told the interviewer that she had not spoken to the Dallals since some time in 2015. (*Id.*). Specifically, Ms. Genovea stated:

- She had never worked 12 hours per day, 7 days per week at any point during her employment with the Dallals;
- She had only once even possibly worked 7 days per week for the Dallals, right after Mr. Dallal's surgery in 2004;

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-09307-MWF (Ex)                              Date:  April 11, 2017
Title:      Lincoln Benefit Life Co. -v- Alex Dallal, et al.

- Her schedule and hours varied greatly, making it difficult for her to remember how many days or hours per week she had previously worked for the Dallals;
- When Ms. Genovea did work, Mrs. Dallal paid her by check;
- In the time that Ms. Genovea cared for Mr. Dallal, his conditioned had improved to the extent that he was able to go to work — eventually he was able to drive himself to work while Ms. Genovea did the grocery shopping or the housekeeping;
- In 2014 she put up the family's Christmas tree, but was otherwise not caring for Mr. Dallal;
- She had never filled out the caregiver notes or signed to verify any of the dates and hours she worked while employed by the Dallals;
- She had been working elsewhere; and
- She had recently received a phone call from Mrs. Dallal, but was unable to meet with her due to work.

(Compl. ¶ 38).

During a subsequent call with Mrs. Dallal, she told Lincoln Benefit that she was unhappy the company had spoken with Ms. Genovea, said that Ms. Genovea had been providing caregiver services to Mr. Dallal since 2004, and wanted all other questions regarding the claim directed to her.  (*Id.* ¶ 39).

Lincoln Benefit subsequently submitted the surveillance notes for independent medical review by a neuropsychologist, who confirmed that Mr. Dallal's activities while under surveillance were inconsistent with either prong of the definition of a Chronically Ill Individual—that is, Mr. Dallal's activities were inconsistent with a finding of a need for substantial supervision or severe cognitive impairment.  (*Id.* ¶ 41). The independent neuropsychologist concluded that Mr. Dallal did not demonstrate any neurological impairments, and displayed a functional capacity allowing him to complete the activities of daily living without assistance.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 16-09307-MWF (Ex) | Date:  April 11, 2017 |
| Title:     Lincoln Benefit Life Co. -v- Alex Dallal, et al. | |

The nurse representative who had previously conducted the home assessment also reviewed the surveillance. (*Id.* ¶ 42). The nurse representative verified the identities of the Dallals and confirmed that Mr. Dallal did not appear to require substantial supervision or demonstrate a severe cognitive impairment. (*Id.*). Based on the surveillance, the nurse representative concluded that Mr. Dallal did not require caregiver assistance. (*Id.*).

Based on all of the foregoing, Lincoln Benefit determined that benefits were no longer payable under the Policy. (*Id.* ¶ 43). On December 16, 2016, Lincoln Benefit informed the Dallals of its decision and of its intent to file suit for recovery of benefits and a declaratory judgment. (*Id.*). Lincoln Benefit filed its Complaint in this Court that same day. (Docket No. 1).

The Complaint alleges the following four claims: Claim One, for a declaratory judgment as to Lincoln Benefit's rights and obligations under the Policy; Claim Two, for common law fraud; Claim Three, for a judicial declaration voiding the Policy; and Claim Four, for restitution of all benefits the Dallals wrongfully received as a result of the alleged fraud. (Compl. ¶¶ 49–73).

## II.    DISCUSSION

### A.    Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-09307-MWF (Ex)            **Date:** April 11, 2017
**Title:**     Lincoln Benefit Life Co. -v- Alex Dallal, et al.

of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

      The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

      Allegations of fraud must meet a higher pleading standard. Fed. R. Civ. P. 9(b) (requiring the pleading party to "state with particularity the circumstances constituting fraud or mistake"). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 16-09307-MWF (Ex)  Date:  April 11, 2017
Title:     Lincoln Benefit Life Co. -v- Alex Dallal, et al.

"[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

In California, a claim of fraud requires Plaintiff to prove the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93, 111 Cal. Rptr. 2d 711 (2001).

### B. The Allegations Meet the Requirements of Rule 9(b)

Defendants' primary contention in the Motion is that the Complaint fails to meet the heightened pleading requirements of Rule 9(b). This argument is unavailing. The Complaint sets out in great detail the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. The Complaint explains that, contrary to the caregiver notes that Mrs. Dallal had submitted to Lincoln Benefit in 2016, Mr. Dallal appeared to be ambulatory, independent, and capable of living a normal life without the assistance of a caregiver. (The Court notes that whether or not the surveillance was appropriate, or is sufficient to show fraud in this action, is a factual question not suitable for resolution on a motion to dismiss.)

This assessment of Mr. Dallal's activities was confirmed by both an independent neurologist and a nurse representative. Moreover, an interview with the purported caregiver confirmed that she had not worked *at all* in the Dallal house since at least 2015. Nevertheless, Lincoln Benefit received thousands of dollars in claimed caregiver expenses throughout 2016, on claim forms signed by Mrs. Dallal. As discussed at the hearing, because the Policy excludes health care services provided by an immediate family member, Mrs. Dallal is barred from claiming that the expenses she claimed were for services that she provided.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-09307-MWF (Ex)          **Date:** April 11, 2017
**Title:** Lincoln Benefit Life Co. -*v*- Alex Dallal, et al.

Whether the Dallals were claiming benefits based on Mr. Dallal's need for substantial assistance or his cognitive impairment is irrelevant for purposes of ruling on the Motion. Under either theory, Lincoln Benefit has alleged with sufficient factual specificity that the Dallals submitted claims for services they never actually received and to which they were patently not entitled. Therefore, the details of the scheme as alleged are sufficiently clear to put Defendants on notice of the claims against them.

At the hearing, counsel for Defendants renewed his contention that because Lincoln failed to allege a specific date on which the fraud began, the pleadings fail to meet the requirements of Rule 9(b). The Complaint alleges that Ms. Genovea had never worked 12 hours per day, 7 days per week for the Dallals. Indeed, the Complaint alleges that she never worked 7 days per week for the Dallals, period. Yet, according to the Complaint, Mrs. Dallal submitted claims for services at this level as far back as 2004, that is, for the duration of the claims. The true extent of the alleged fraud, if indeed there was any, is an issue that may be resolved through fact discovery. For purposes of the pleadings, Lincoln has alleged the fraudulent scheme with sufficient specificity to put Defendants on notice of the claims against them, to the extent required by Rule 9(b).

### C.     <u>The Incontestability Clause Does Not Bar the Claims in this Action</u>

Defendants next contend that the incontestability clause in the Policy limits Lincoln Benefit's right to void the Policy due to the alleged fraud. The incontestability clause states:

> If this policy has been in force for two (2) years it is not contestable upon the grounds of misrepresentation alone. Such policy may be contested only upon a showing that the Insured knowingly and intentionally misrepresented relevant facts relating to the Insured's health.

(Policy at 10). Defendants appear to contend that, under this clause, the Policy cannot be voided (or terminated) based solely on an alleged fraudulent scheme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-09307-MWF (Ex)　　　　　　　Date:  April 11, 2017
Title:　　　Lincoln Benefit Life Co. -v- Alex Dallal, et al.

　　　The California Insurance Code requires all disability insurance policies to include an incontestability clause. Cal. Ins. Code § 10350.2. "Where the incontestability period has run, incontestability clauses prevent lawsuits to rescind disability insurance policies based upon claims of fraud or misrepresentation *in the procurement of the policy*." *Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997) (emphasis added). The relevant case law does not treat the incontestability clause as applying to fraudulently submitted claims. *See, e.g.*, *Galanty v. Paul Revere Life Ins. Co.*, 23 Cal. 4th 368, 381–82, 97 Cal. Rptr. 2d 67 (2000) (analyzing incontestability clause only as applying to "fraudulent statements by the insured [made] in the application for insurance"); *N.Y. Life Ins. Co. v. Hollender*, 38 Cal. 2d 73, 78, 237 P.2d 510 (1951) ("The denial of liability under a policy by reason of fraud or misrepresentation *in its procurement* is the 'contest' which is governed by the incontestable clause . . . .") (emphasis added).

　　　Here, Lincoln Benefit does not seek rescission of the contract due to any alleged fraud in procuring the Policy. Rather, Lincoln Benefit alleges that the Dallals submitted claims, at least as far back as 2015, for services that they were not actually receiving and to which they could not possibly be entitled. These claims are simply not the sort that are contemplated by the incontestability clause, and thus are not barred under the language of that clause.

　　　**D.　　The Request to Void the Policy is Properly Pled, Even As to Mrs. Dallal**

　　　Relatedly, Defendants claim that Lincoln Benefit cannot seek to void the Policy without also offering Defendants a refund of their policy premiums. This issue appears to the Court to be a defense to the requested remedy, and thus does not appear to bear on the sufficiency of the pleadings. It is not a proper ground for granting a motion to dismiss.

　　　Defendants further claim that even if the Policy is found to be void as to Mr. Dallal, it would be unfair and unjust to void the policy as to Mrs. Dallal, who has never submitted a claim under the Policy, or received any benefits. Taking the facts as pled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 16-09307-MWF (Ex)          Date: April 11, 2017
Title:     Lincoln Benefit Life Co. -v- Alex Dallal, et al.

in the Complaint as true, however, Mrs. Dallal was instrumental to the fraud — it was she who signed the caregiver notes indicating that Mr. Dallal was receiving care 12 hours a day, 7 days a week, when in fact he was not; and it was she who told the nurse representative that Mr. Dallal required a level of care that conflicted with the Feld Statement and that was later called into question by Lincoln Benefit's surveillance.

California Insurance Code section 650 provides that any "rescission shall apply to *all* insureds under the contract, including additional insureds, unless the contract provides otherwise." *Id.* Defendants do not contend that the Policy provides otherwise. It stands to reason that as an active participant in furthering the alleged fraud, Mrs. Dallal is just as culpable for any wrongdoing as Mr. Dallal, and should be subject to the same remedies. It is also a reasonable inference from the allegations that she benefited from the fraud, if it is proven.

### E.     Claim Four, for Unjust Enrichment, is Properly Pled

Finally, Defendants contend that Claim Four, which alleges unjust enrichment, is not actually a claim and should be dismissed.

Defendants are correct that California does not have a standalone cause of action for unjust enrichment. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, the theory of unjust enrichment — that a defendant has been unjustly conferred a benefit through, *inter alia*, fraud — survives as a remedy in a quasi-contract claim. *Id.* In *Astiana*, the Ninth Circuit held that "[w]hen a plaintiff alleges unjust enrichment, a court *may* 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (emphasis added). Defendants contend that the language of *Astiana* is permissive, and urge the Court not to exercise its discretion to construe Claim Four as a quasi-contract claim because it is insufficiently pled under Rule 9(b).

The Court has already determined that Lincoln Benefit adequately pled fraud as to all of its claims, even under the heightened pleading standard of Rule 9(b). Accordingly, the Court exercises its discretion to construe Claim Four as a quasi-contract claim for restitution.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 16-09307-MWF (Ex)          **Date:** April 11, 2017
Title:    Lincoln Benefit Life Co. -*v*- Alex Dallal, et al.

### III. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**. Defendants shall file their Answer on or before **April 24, 2017.**

IT IS SO ORDERED.